# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1068

_____

|  |  |  |
|---|---|---|
| Janice Smith, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Western District of Arkansas. |
| | * | |
| UNUM Life Insurance Company | * | |
| of America, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 12, 2002

Filed: October 2, 2002

_____

Before RILEY, BEAM, and MELLOY, Circuit Judges.

_____

RILEY, Circuit Judge.

After being diagnosed with a latex allergy, Janice Smith (Smith) applied for long-term disability benefits under an employee benefit plan administered by UNUM Life Insurance Company of America (UNUM). UNUM began paying Smith benefits. After twelve months of benefits, the policy's definition of "total disability" changed, requiring UNUM to pay benefits only if Smith is unable to work in any gainful occupation for which she was qualified by education, training or experience. UNUM determined Smith was not totally disabled from any gainful occupation and

discontinued benefits. Smith filed a lawsuit pursuant to the Employees Retirement Income Security Act of 1974 (ERISA). On judicial review, the district court determined UNUM abused its discretion in terminating Smith's benefits. Because we conclude UNUM's decision to discontinue Smith's disability benefits was supported by substantial evidence, we reverse.

## I.     BACKGROUND

Smith is a registered nurse. During 1997, she worked as an infection control/employee health nurse at the Northwest Arkansas Rehabilitation Hospital in Fayetteville, Arkansas. In May 1997, Dr. Laura Koehn (Dr. Koehn), a board certified allergist/immunologist, diagnosed Smith with a Class IV RAST allergy to latex. On November 4, 1997, Smith's employer suspended her for poor work performance, and on November 11, 1997, Smith was terminated. Smith attributed her work deficiency to her latex hypersensitivity.

On November 7, 1997, Smith applied for her employer's long-term disability benefits. Under the terms of the disability policy with UNUM, Smith was eligible to receive benefits for twelve months if UNUM determined she was disabled from performing the "material and substantial duties" of her "regular occupation." After the twelve-month period, Smith would continue receiving benefits only if UNUM determined that "due to the same sickness or injury" Smith was unable to perform the "duties of any gainful occupation" for which she is "reasonably fitted by education, training, or experience." The policy also provided that UNUM would terminate benefits after twelve months of payments, upon a finding that Smith is "able to work in any gainful occupation on a part-time basis," but chooses not to work. Part-time basis is defined as "the ability to work and earn 20% or more of your indexed monthly earnings."

In support of her disability claim, Smith submitted statements from seven treating physicians. All seven physicians diagnosed Smith as having a latex allergy and advised Smith to limit, and where possible, avoid exposure to latex. A family practitioner warned that Smith is "at a high risk for life threatening reaction to latex." Two other treating physicians concluded Smith should not work in an environment containing latex. One of these treating physicians discussed with Smith the possible necessity of changing occupations to avoid latex exposure.

Two of Smith's treating physicians imposed further work restrictions. Dr. Koehn advised that Smith "should avoid all latex exposure or as much as possible – should not work in medical or paramedical profession due to presence of latex." However, because "latex is ubiquitous in our environment," the allergist noted it would "be impossible to find [a] latex free work environment" for Smith, and concluded Smith "probably will not be able to return to work" as a result of her latex sensitivity. A primary care physician, Dr. Doty Murphy (Dr. Murphy), noted that Smith has a "severe latex sensitivity" which "render[s] her incapable of any work activity." Dr. Murphy explained Smith's allergy was more than an inconvenience and "could result in her death, hospitalization, and/or prolonged aggravation of her disability." Dr. Murphy did acknowledge that when Smith is "not exposed to latex, she is able to function in her home and perform minimal activities." Neither Dr. Koehn nor Dr. Murphy addressed the possibility of Smith performing home-based employment.

In August 1998, UNUM approved Smith's claim for disability benefits based on its determination that Smith was disabled from performing her regular occupation, and UNUM paid benefits retroactively from February 2, 1998. In May 1999, UNUM commissioned Dr. Michael Joseph (Dr. Joseph), a board certified allergist and immunologist, to perform an independent medical examination (IME) of Smith. When UNUM scheduled the IME, Dr. Koehn prescribed that the IME should be conducted in a latex-free environment. When Smith arrived at Dr. Joseph's office for

the IME, she discovered that not one of the examination rooms was latex free. Dr. Joseph used a pair of vinyl gloves borrowed from Smith to perform the IME. Despite her exposure to latex in the medical office, Smith suffered no immediate allergic reaction during the IME.

Due to Smith's concerns about latex exposure, Dr. Joseph reported that his examination of her was "somewhat limited," although he did not identify the limitations on his examination. Smith reported "a history of intermittent rash with shortness of breath when exposed to latex," and also noted multiple food allergies. Dr. Joseph observed that Smith's heart and lungs were unremarkable and that her skin did not reveal any hives or swelling. Dr. Joseph performed a RAST test on Smith that revealed a Class IV IGE reaction to latex which he interpreted as being "consistent with moderate hypersensitivity to latex antigens."

Following his examination and review of Smith's medical history, Dr. Joseph opined that Smith has a "history of asthma and possible anaphylaxis and contact urticaria when exposed to latex in the work area." Consistent with the opinions of Smith's treating physicians, Dr. Joseph believed Smith "should be restricted from exposure to latex." However, Dr. Joseph felt that many of her previous symptoms of asthma may not be related to latex exposure because the delayed reactions would not be consistent with latex hypersensitivity. He concluded that Smith should be able to continue her occupation as an employee health nurse in a latex-free clinic or hospital environment. Alternatively, he wrote, Smith "can work in any area where latex use is limited." He further suggested that Smith's asthma could be treated more aggressively.

The day after the IME, Smith called UNUM to complain about Dr. Joseph. Specifically, Smith complained that despite Dr. Koehn's medical directive that Smith be protected against latex exposure, Dr. Joseph exposed her to latex, failed to listen to her lungs, and told her he had seen one person with a latex allergy in an emergency

-4-

room. Smith also complained she was not feeling good because of the latex exposure. Dr. Koehn called UNUM to advise she had prescribed Smith Prednisone for a short time because of her delayed reaction to the latex exposure during the IME. According to Dr. Koehn, Smith was doing better, although her blood sugars were out of control due to the Prednisone medication. Dr. Koehn also reported contacting Dr. Joseph to inquire about his clinical experience in treating latex allergy and he told her he had read text books on the subject.

In August 1999, UNUM commissioned a vocational consultant to perform a transferable skills analysis on Smith. Using the residual functional capacities outlined in Dr. Joseph's written report, the vocational consultant determined Smith's skills were readily transferable to positions in risk management, healthcare administration, and social or medical services. He determined employment in office settings, as opposed to medical facilities and laboratories, would be consistent with the work parameters outlined in Dr. Joseph's IME. The consultant also concluded Smith was able "to assume full time work in a non-medical setting where use of latex, particularly medical latex products such as gloves are not in use."

UNUM also referred Smith's file to another vocational expert to address specific issues pertaining to the presence of latex in commercial offices and office equipment. In his vocational review, this expert opined that latex office sources can be replaced with non-latex items and that non-latex gloves provided added protection against latex exposure. He reported that automobiles and office settings offer similar types of latex exposure and reasoned that a person who could operate an automobile would be able to function in an office setting with the use of non-latex items and non-latex gloves. Finally, this expert reported that non-latex peripheral computer equipment, such as a mouse pad, keyboard and calculator, is available and is known to provide "effective barrier protection for persons with latex allergy," although he was not aware of any latex-free computers.

Following the IME and vocational consultations, Francis A. Bellino, M.D. (Dr. Bellino), UNUM's reviewing physician, conducted two medical reviews of Smith's claim. In the first medical review dated August 11, 1999, Dr. Bellino stated that Smith's medical records documented "a significant, moderate to severe, allergy to latex." Because Dr. Bellino determined Smith had continued working for nearly three years following a possible anaphylactic reaction to latex in January 1995, he concluded Dr. Joseph's recommendation restricting Smith to working areas with limited exposure to latex was valid.

In October 1999, Dr. Bellino conducted a second medical review in which he documented pertinent parts of a telephone conversation with Dr. Koehn. Dr. Bellino inquired whether Smith could work in the latex-free environment of her own home[1] performing either remote electronic nurse triage or medical file reviews. Dr. Bellino recorded Dr. Koehn's response to be that Smith could "probably function on a four to six hour basis doing something in her home . . . such as file reviews." Dr. Bellino also recorded information relayed to a UNUM customer care services representative that Smith had taken a four-hour car ride without experiencing an allergic reaction. Based on this information, Dr. Bellino believed that it is "extremely likely" Smith "would be able to function in a typical office setting despite her latex allergy." However, because of Dr. Koehn's insistence that Smith could not function outside her home, Dr. Bellino suggested that a work trial in Smith's home would be "a medically appropriate step," and documented that Dr. Koehn was disposed to consider home-based work.

On October 19, 1999, Dr. Bellino wrote to Dr. Koehn, addressing the discrepancies between her medical findings and those of Dr. Joseph. Dr. Bellino wrote Smith is "capable of far more than the level of the restrictions and limitations"

---

[1]At the suggestion of her allergist, Smith has moved to rural Oklahoma where she lives a secluded life to avoid exposure to latex.

placed on her by Dr. Koehn. Dr. Bellino based his opinion on Dr. Koehn's statement that Smith could enter her office without significant consequences; Smith's ability to be inside a car containing latex of a non-particulate nature without experiencing serious reactions; and Dr. Joseph's IME opinion. Dr. Bellino documented his recommendation that Smith could work eight hours per day as a telephone triage nurse and file reviewer, as well as Dr. Koehn's response that four to six hours a day was more realistic. Dr. Bellino asked Dr. Koehn to sign the letter if it accurately reflected the substance of their telephone conversation and invited any corrections. Dr. Koehn signed, dated, and returned the letter, adding a handwritten notation: "Mrs. Smith has had problems when taking long trips in her car (though not every time) & in social situations (wedding of a family member)."

On February 21, 2000, UNUM denied Smith's long-term disability claim based on its findings that Smith's occupation as an employee health nurse did not require exposure to latex and its determination that Smith could perform other gainful occupations as outlined in the vocational consultation. Smith appealed UNUM's denial of benefits and exhausted her administrative remedies. She then filed this lawsuit.

The district court reversed UNUM's decision to discontinue Smith's long-term disability benefits. In an extensive and detailed opinion, the district court concluded UNUM's denial of long-term benefits was not supported by substantial evidence and was thus unreasonable. Reviewing the evidence, the court stated "it cannot be realistically argued that employment opportunities exist for an applicant who would require – as necessary accommodations if hired – that the business replace every pencil, rubber band, stamp pad, envelope, mouse pad, calculator, keyboard and, possibly, even be required to move its offices and retrofit its ventilation system." The court further found no evidence either contradicting the claimant's proof that paper and ink contain latex or establishing she could do paperwork at home without being exposed to photocopies and ink. Considering the life-threatening nature of

Smith's condition, the court characterized UNUM's decision to deny benefits as "extraordinarily imprudent."

On appeal, UNUM claims the district court erred in ruling that no substantial evidence existed to support its determination that Smith was not disabled from any gainful occupation. UNUM claims the plan administrator did not abuse its discretion by relying on medical opinions rendered by an independent medical examiner and a reviewing physician, as well as two vocational consultants, rather than the opinions rendered by Dr. Koehn and Dr. Murphy, two of Smith's treating physicians. UNUM contends an IME opinion constitutes substantial evidence as a matter of law.

## II.     DISCUSSION
### A.      Standard of Review

ERISA expressly provides for judicial review of disability benefit denial decisions. The Supreme Court has recognized that a deferential standard of review is appropriate under 29 U.S.C. § 1132(a)(1)(B), if "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). The parties agree that the deferential abuse of discretion standard was the proper standard of review for the district court to analyze UNUM's fact-based disability determination. We review de novo the district court's application of this deferential standard of review. Donatelli v. Home Ins. Co., 992 F.2d 763, 765 n.2 (8th Cir. 1993).

In applying an abuse of discretion standard, the reviewing court must affirm if a "reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." Ferrari v. Teachers Ins. and Annuity Ass'n, 278 F.3d 801, 807 (8th Cir. 2002) (internal citation omitted). A reasonable decision is one based on substantial evidence that was actually before the plan administrator. See Donaho v. FMC Corp., 74 F.3d 894,

899 (8th Cir. 1996). Substantial evidence is "more than a scintilla but less than a preponderance." Schatz v. Mutual of Omaha Ins. Co., 220 F.3d 944, 949 (8th Cir. 2000).

A reviewing court may consider both the quantity and quality of evidence before a plan administrator. Donaho, 74 F.3d at 900. When a conflict in medical opinions exists, the plan administrator does not abuse his discretion by adopting one opinion, if reasonable, and finding that the employee is not disabled. See id. at 901. A court should be hesitant to interfere with the administration of an ERISA plan.

## B. Deferential Review

The administrative record reveals that UNUM based its decision to discontinue benefits on: (1) an IME of Smith by a board-certified allergist/immunologist who opined that Smith should likely be able to continue her regular occupation in a latex-free environment or could be gainfully employed with a medium workload in an environment where exposure to latex was limited; (2) a reviewing physician who performed two medical file reviews and concluded the IME opinion was valid and that Smith could, at a minimum, engage in part-time, home-based employment; (3) a transferable skills analyst who concluded Smith has "transferable skills and abilities to assume full time work in a non-medical setting where use of latex, particularly medical latex products such as gloves are not in use" ; and (4) a vocational consultant review that concluded reducing latex exposure in ordinary office settings coupled with substitution of non-latex office equipment and the use of non latex gloves would allow a latex allergic person to function in an office setting.

The medical and vocational opinions on which UNUM relied were not unreasonable or overwhelmed by contrary evidence. All the medical opinions, including those rendered by an independent examining physician and UNUM's reviewing physician, diagnosed Smith with a significant latex allergy which requires her to avoid exposure to latex, especially in hospital and clinical environments. To

the extent the medical opinions conflicted, the disagreement concerned whether Smith's latex allergy causes her to be totally disabled, and thereby unable to perform any gainful employment. On this issue, two of Smith's seven treating physicians believed that Smith's latex allergy precluded her from working in any occupation. Although the medical opinions of Dr. Joseph and Dr. Bellino conflicted with the medical opinions rendered by Dr. Koehn and Dr. Murphy on Smith's ability to work, the opinion of Dr. Joseph and Dr. Bellino were not materially inconsistent with medical opinions rendered by Smith's other treating physicians, none of whom restricted Smith from working either in a commercial office environment or in her home.

UNUM was not obliged to defer to Dr. Koehn's opinions or to the opinions of Smith's other treating physicians. Although Donaho recognizes that the opinion of a reviewing physician is generally accorded less deference than the opinion of a treating physician in disability cases under ERISA, 74 F.3d at 901, the same does not hold true for the opinion of an independent examining physician. Delta Family-Care Disability & Survivorship Plan v. Marshall, 258 F.3d 834, 842 (8th Cir. 2001). A treating physician's opinion does "not automatically control, since the record must be evaluated as a whole." Fletcher-Merritt v. Noram Energy Corp., 250 F.3d 1174, 1180 n.3 (8th Cir. 2001) (quoting Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995)). UNUM's reliance on an independent examining physician's opinion rather than on two treating physicians' opinions is not proof of unreasonable or imprudent conduct. See Coker v. Metro. Life Ins. Co., 281 F.3d 793, 798-99 (8th Cir. 2002).

Where the record reflects conflicting medical opinions, "the plan administrator does not abuse his discretion in finding that the employee is not disabled." Donaho, 74 F.3d at 901. If a plan administrator is dissatisfied with the medical evidence submitted by an employee's treating physician(s), it may require the employee to undergo an IME and may discount a treating physician's opinion "entirely in favor of

a contrary opinion produced by the independent examiner."  House v. Paul Revere Life Ins. Co., 241 F.3d 1045,1048 (8th Cir. 2001).

UNUM argues our decisions in Donaho and House propose an IME opinion constitutes substantial evidence as a matter of law.  At oral argument, Smith conceded a plan administrator is entitled to rely on an IME opinion.  However, she contends an exception to the general rule operates in this case because the examining physician performed an incomplete IME, misinterpreted the results of a RAST test, relied on textbooks, and lacked requisite experience with latex hypersensitivity.  Smith argues these factors render the examining physician's opinion unreasonable.

The administrative record does not support Smith's contentions.  Although the record reveals that Smith and Dr. Koehn complained to UNUM personnel about the examination and Dr. Joseph's experience with latex hypersensitivity, neither Smith nor Dr. Koehn challenged his qualifications to perform an IME, formally objected to the IME, or demanded that UNUM commission a second IME before making a determination on Smith's claim.  Nor did Smith in her administrative appeals challenge the validity of the IME or the credentials of Dr. Joseph.

The administrative record reveals that Dr. Joseph rendered essentially the same medical opinion as did the majority of Smith's treating physicians.  Even Dr. Koehn, on whose opinion Smith principally relies, acknowledged Smith could "probably function on a four to six hour basis doing something in her home . . . such as file reviews," which adds further credibility to Dr. Joseph's opinion.  Absent evidence in the administrative record indicating specific deficiencies in either the IME or Dr. Joseph's credentials, we cannot conclude his medical opinion fails to constitute substantial evidence upon which UNUM could reasonably rely to deny Smith's claim.

We acknowledge this is a close case, and we respect the district court's opinion.  The administrative record contains evidence both for and against Smith's claim.  See

<u>Delta Family-Care Disability & Survivorship Plan</u>, 258 F.3d at 842. However, based on a deferential standard of review, we conclude substantial evidence supports UNUM's decision to discontinue Smith's benefits.

UNUM sought input from Dr. Koehn and offered her the opportunity to respond to the medical opinions of Dr. Joseph and Dr. Bellino. UNUM weighed all the evidence presented. Reasonable minds could accept Dr. Joseph's and Dr. Bellino's conclusions that Smith could be gainfully employed in either a commercial office or a home-based setting. Certainly, reasonable minds could also disagree with their conclusions. Under our precedent, UNUM did not abuse its discretion in determining that Smith was not totally disabled from performing any gainful occupation. <u>House</u>, 241 F.3d at 1048; <u>Donaho</u>, 74 F.3d at 901.

## III. CONCLUSION

Having determined that UNUM's decision to terminate Smith's long-term disability benefits was supported by substantial evidence, we vacate the judgment of the district court and direct that judgment be entered in favor of UNUM. We further vacate the district court's award of attorney fees to Smith.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-12-