# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2389

_____

Nancy Kecso,                          *
                                      *
           Appellee,                  *
                                      *     Appeal from the United States
     v.                               *     District Court for the
                                      *     Southern District of Iowa.
Meredith Corporation,                 *
                                      *
           Appellant.                 *


_____

Submitted: November 16, 2006
Filed: March 27, 2007

_____

Before BYE, BOWMAN and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Nancy Kecso sued her employer, Meredith Corporation, seeking to overturn Meredith's decision to discontinue the long-term disability benefits that she had been receiving after being diagnosed with a brain tumor. On cross-motions for summary judgment, the district court denied Meredith's summary judgment motion but granted Kecso's and subsequently awarded her a money judgment. Meredith appeals, and we reverse.

## I. BACKGROUND

Kecso began working for Meredith in 2001. In November 2002, Kecso suffered a seizure and was hospitalized. Scans taken that day revealed that Kecso had a tumor in her brain above her pituitary gland. In January 2003, doctors at the Mayo Clinic diagnosed the tumor as a benign astrocytoma. They recommended no treatment other than anti-seizure medication. Since her seizure, Kecso has had recurrent headaches, body aches and fatigue.

After the seizure, Kecso returned to work for a brief period in December 2002. Meredith subsequently granted Kecso leave under the Family Medical Leave Act. In February 2003, Kecso began receiving short-term disability benefits and then long-term disability ("LTD") benefits beginning in June 2003. The record is silent as to whether Meredith expressly determined that Kecso qualified for LTD benefits under its disability plan or whether Meredith simply decided to pay Kecso LTD benefits while attempting to ascertain her eligibility for them. Meredith both insures and administers its disability benefits plan, which is subject to the Employee Retirement Income Security Act ("ERISA"). Under the plan, Meredith has discretion to interpret the terms of the plan and to determine eligibility for benefits.

Kecso regularly saw a neurologist, Dr. David Friedgood, beginning in late 2002. In early December 2002, Dr. Friedgood certified to Meredith that Kecso's only medical restriction was "no driving." Later that month, Dr. Friedgood released Kecso to work without restrictions beginning in January of 2003, again noting only that she was not to drive. In March, May, August, October and December of 2003, Dr. Friedgood certified to Meredith that Kecso had no medical restrictions. However, in February 2004, he certified that "[Kecso] is limited by her affective and cognitive response to her brain tumor. She finds it difficult to function and can not work because of these symptoms." In addition to her visits with Dr. Friedgood, Kecso began seeing a psychiatrist in August 2003. The psychiatrist diagnosed Kecso with

depression and anxiety and prescribed medication and therapy sessions with Dianne Walsh, a licensed independent social worker.

Under Meredith's disability benefits plan, participants are required to provide all information that Meredith considers to be relevant to its disability determination on a continuing basis in order for the participants to maintain eligibility for benefits. Despite having signed an authorization to release all of her medical records to Meredith, Kecso balked at the release of notes related to her psychiatric and psychotherapy visits, ultimately refusing to release the notes of her psychotherapy sessions. Because Meredith believed that those notes were relevant and might explain inconsistencies in Kecso's other medical records, Meredith suspended Kecso's LTD benefits in February 2004. In March 2004, Kecso wrote to Meredith objecting to the suspension, and Meredith treated her letter as an administrative appeal under the plan.

From February through June 2004, while Kecso's administrative appeal was pending, the parties argued about the relevance of Kecso's mental health records to her eligibility for LTD benefits under the plan. Kecso insisted that they were irrelevant to her disability status, and Meredith sought to review them in an effort to reconcile inconsistencies in Kecso's other medical records, particularly with respect to Dr. Friedgood's inconsistent opinions regarding Kecso's ability to work and whether her tumor was causing her headaches and fatigue. Ultimately, the parties agreed that Meredith would evaluate Kecso's eligibility for LTD benefits without considering Kecso's mental health. In March 2004, in the course of these discussions, Kecso requested a complete copy of her claim file. Meredith enclosed a copy of her claim file with its June 18, 2004 letter to Kecso's attorney informing him of Meredith's determination that Kecso was not disabled within the meaning of the plan.

Kecso sought review in district court, where the parties filed cross-motions for summary judgment. The district court granted Kecso's motion and denied Meredith's, finding that Meredith's decision was not entitled to review under the plan's abuse of

discretion standard and that the evidence, when viewed on a standard "approaching *de novo* review," established that Meredith wrongfully denied Kecso's claim for LTD benefits. The district court subsequently awarded a judgment of $42,398.00 to Kecso, representing unpaid benefits through the date of the district court's judgment and prejudgment interest. Meredith appeals the district court's summary judgment rulings.

## II.    DISCUSSION

### A.    Standard of Review

We review an appeal from a grant of summary judgment de novo, viewing the evidence in a light most favorable to the nonmoving party. *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998). Where, as here, an ERISA plan gives an administrator discretionary authority to determine eligibility for benefits, a district court will ordinarily review the administrator's decision for an abuse of discretion. *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Nevertheless, a court may employ a less deferential standard of review if the claimant presents material, probative evidence demonstrating (1) that a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to the claimant. *Woo*, 144 F.3d at 1160; *see also Buttram v. Cent. States, S.E. & S.W. Areas Health & Welfare Fund*, 76 F.3d 896, 901 (8th Cir. 1996) ("[The] irregularities must have some connection to the substantive decision reached; i.e., they must cause the actual decision to be a breach of the plan trustee's fiduciary obligations."). *Woo*'s second prong "presents a considerable hurdle for plaintiffs." *Torres v. UNUM Life Ins. Co. of Am.*, 405 F.3d 670, 679 (8th Cir. 2005) (internal quotation omitted). We review de novo the district court's determination of the proper standard of review to be applied to Meredith's determination that Kecso was not disabled under the terms of its disability plan. *Woo*, 144 F.3d at 1160.

The district court found that Meredith's roles as employer, insurer and plan administrator established a conflict of interest. We assume without deciding that Meredith had a palpable conflict of interest satisfying the first prong of *Woo*.[1] Similarly, we will assume without deciding that Meredith's failure to provide Kecso a copy of her claim file "upon request" prior to determining Kecso's disability status constitutes a serious procedural irregularity satisfying the first prong of *Woo*. *See* 29 C.F.R. § 2560.503-1(h)(2)(iii). In both of these instances, however, Kecso has failed to present any evidence of a causal connection between the conflict or procedural irregularity and any breach of Meredith's fiduciary duties to Kecso. While the district court cited the rule that the existence of a conflict or procedural irregularity does not establish a breach of fiduciary duty without "some connection to the substantive decision reached," it failed to cite any evidence causally connecting either the conflict or procedural irregularity to any breach of a fiduciary duty on Meredith's part. Standing alone, a conflict of interest does not establish a breach of fiduciary duty because "ERISA itself contemplates the use of fiduciaries who might not be entirely neutral." *Tillery v. Hoffman Enclosures, Inc.*, 280 F.3d 1192, 1197 (8th Cir. 2002). We have also observed that "[t]he mere assertion of an apparent irregularity, without more, is insufficient to give rise to heightened review." *Layes v. Mead Corp.*, 132

---

[1]There does not appear to be consensus in this circuit as to whether a presumption of a palpable conflict of interest should apply under *Woo*'s first prong where the same entity both funds and administers the benefits plan. *Compare Tillery v. Hoffman Enclosures, Inc.*, 280 F.3d 1192, 1197 (8th Cir. 2002) (holding that when an entity both funds and administers a plan, a rebuttable presumption of a palpable conflict of interest arises) *and Schatz v. Mut. of Omaha Ins. Co.*, 220 F.3d 944, 947-48 (8th Cir. 2000) (holding that "when the insurer is also the plan administrator, we have recognized something akin to a rebuttable presumption of a palpable conflict of interest") *with Chronister v. Baptist Health*, 442 F.3d 648, 655 (8th Cir. 2006) (holding that "it is wrong to assume a financial conflict of interest from the fact that the plan administrator is also the insurer") *and Davolt v. Executive Comm. of O'Reilly Auto.*, 206 F.3d 806, 809 (8th Cir. 2000) ("Although the fact that the plan administrator is also the insurer may give rise to a conflict of interest, the district court erred when it assumed an automatic conflict of interest existed.").

-5-

F.3d 1246, 1250 (8th Cir. 1998). "[A]bsent material, probative evidence, beyond the mere fact of the apparent irregularity, tending to show that the administrator breached his fiduciary obligation, we will apply the traditional abuse of discretion analysis." *Buttram*, 76 F.3d at 900 (internal citations omitted).[2] Consequently, because Kecso failed to present evidence that the conflict of interest or the procedural irregularity *caused* Meredith to breach its fiduciary duty, neither warrants a review of Meredith's decision on a standard less deferential than abuse of discretion.

The district court also held that under the first prong of *Woo*, Meredith acted without proper judgment by failing to give appropriate weight to Dr. Friedgood's opinions and by initially paying LTD benefits and subsequently denying them based substantially on the same evidence. It then held that Meredith's failure to use proper judgment established the causal connection required under *Woo*'s second prong. We do not agree that Meredith acted without proper judgment.

The district court concluded that Meredith failed to exercise proper judgment because "Meredith disregarded Dr. Friedgood's opinions that Kecso's pain, headaches, and fatigue were due to her astrocytoma despite his credentials as a neurologist . . . and the fact that he treated Kecso for over two years, from the time her tumor was diagnosed, before Meredith terminated her LTD benefits." Meredith did not disregard Dr. Friedgood's opinions. The record amply demonstrates that from March 2003 through June 2004, with two exceptions, Dr. Friedgood repeatedly certified to Meredith that Kecso had no medical restrictions. The first exception arose in a December 31, 2003 letter from Dr. Friedgood to Meredith stating, "[a]s a result

---

[2]We also find it persuasive that Kecso identifies no prejudice flowing from Meredith's failure to produce her claim file prior to deciding her administrative appeal. Presumably, had this procedural irregularity caused a serious breach of Meredith's fiduciary duty to Kecso, she could identify some harm arising from the breach. *See Neumann v. AT&T Commc'ns, Inc.*, 376 F.3d 773, 782 n.4 (8th Cir. 2004).

of [Kecso's] condition she suffers from chronic headaches and excessive fatigue. She has been unable to return to her job because of these symptoms." Less than two months earlier, Dr. Friedgood had written to Kecso's primary physician that "[Kecso] continues to complain of chronic fatigue and a number of sensory complaints, the exact etiology of which is unknown." The record reveals no explanation as to how or why Dr. Friedgood's opinion about the causation of Kecso's sensory complaints changed in those two months. The second exception was Dr. Friedgood's medical certification to Meredith on February 4, 2004, in which he said, "[Kecso] is limited by her affective and cognitive response to her brain tumor. She finds it difficult to function and can not work because of these symptoms." In the letter reporting its decision to discontinue Kecso's LTD benefits, after recounting both Dr. Friedgood's observations and other relevant evidence, Meredith reasonably concluded, "[T]he medical records contain inconsistencies that cause Meredith to question the accuracy with which she is self-reporting her symptoms." As in *Pralutsky v. Metropolitan Life Insurance Co.*, "[t]his is not a case where the plan trustee failed to inquire into the relevant circumstances at issue, or never offered a written decision that can be reviewed, or committed irregularities so severe that the court 'has a total lack of faith in the integrity of the decision making process.'" 435 F.3d 833, 838 (8th Cir.) (quoting *Buttram*, 76 F.3d at 900), *cert. denied*, --- U.S. ---, 127 S. Ct. 264 (2006). We similarly conclude that Meredith did not fail to use proper judgment in its consideration of the unexplained inconsistency in Dr. Friedgood's opinions.

We also do not agree with the district court's conclusion that Meredith did not use proper judgment in initially paying LTD benefits and subsequently denying them based substantially on the same evidence. While we are mindful that "unless information available to an insurer alters in some significant way, the previous payment of benefits is a circumstance that must weigh against the propriety of an insurer's decision to discontinue those payments," *McOsker v. Paul Revere Life Insurance Co.*, 279 F.3d 586, 589 (8th Cir. 2002), we are not convinced that *McOsker* compels a finding here of failure to use proper judgment, nor are we convinced that

-7-

Meredith failed to use proper judgment under these circumstances, *see id*. ("We are not suggesting that paying benefits operates forever as an estoppel so that an insurer can never change its mind . . . ."). To the contrary, the record suggests that Meredith simply agreed to pay LTD benefits to Kecso while it sought to reconcile the conflicting medical information by obtaining all of Kecso's relevant medical records. Kecso's refusal to provide the psychotherapy records that might have revealed whether her symptoms were related to her tumor frustrated Meredith's investigation.[3] As a result, Meredith exercised its option under the plan to suspend Kecso's LTD benefits. Once the parties reached a compromise regarding Kecso's mental health records, Meredith made a prompt determination of Kecso's eligibility for LTD benefits. Moreover, the record reflects that Meredith received significant additional medical information between the time it began paying LTD benefits to Kecso in June 2003 and the date that it determined that Kecso was ineligible in June 2004. This information included several medical certifications from Dr. Friedgood that Kecso had no medical restrictions and his opinions that Kecso's fatigue and pain were of unknown etiology and that she could perform daily activities at home. Rather than evidencing a lack of proper judgment, this record reflects Meredith's exercise of reasonable and prudent judgment. The fact that Meredith agreed to pay LTD benefits while it investigated apparent inconsistencies and ambiguities in the medical record and that it based its decision on the entire record, including subsequently received medical evidence, does not create a basis upon which a court should find a failure to use proper judgment and apply a less deferential standard of review. *See Tillery*, 280 F.3d at 1197 ("The plan administrator's fiduciary duties extend to everyone covered by the plan, and an administrator who fails properly to investigate a claim breaches its fiduciary duty to all beneficiaries by granting benefits to unqualified claimants.").

---

[3]In order to receive LTD benefits under Meredith's plan, a claimant must be "totally disabled," defined as: "(1) Due to an illness or injury, you are unable to perform the material duties of your regular occupation at Meredith, and would be unable to perform similar duties at any other employer; and (2) You are under the continuous care of a physician."

Because we find no basis warranting a review of Meredith's decision on a standard less deferential than abuse of discretion, the district court erred by failing to review Meredith's benefits decision on an abuse of discretion standard.

### B.     Meredith's Benefits Decision

We now turn to the merits of Meredith's denial of Kecso's claim for LTD benefits. *See Rittenhouse v. UnitedHealth Group Long Term Disability Ins. Plan*, 476 F.3d 626, 629-32 (8th Cir. 2007) (holding that the district court erred in applying de novo standard; proceeding to review the merits of the claim under an abuse-of-discretion standard). Under an abuse of discretion standard, "the plan administrator's decision will be upheld if it was reasonable, that is, if it was supported by substantial evidence. If the decision satisfies this standard, it should not be disturbed even if another reasonable, but different, interpretation may be made." *McGarrah v. Hartford Life Ins. Co.*, 234 F.3d 1026, 1031 (8th Cir. 2000) (internal quotation omitted). Substantial evidence is more than a scintilla but less than a preponderance. *Phillips-Foster v. UNUM Life Ins. Co. of Am.*, 302 F.3d 785, 794 (8th Cir. 2002). "Where the record reflects conflicting medical opinions, the plan administrator does not abuse his discretion in finding that the employee is not disabled." *Smith v. UNUM Life Ins. Co. of Am.*, 305 F.3d 789, 795 (8th Cir. 2002) (internal quotation omitted).

Viewing the evidence in the light most favorable to Kecso, *see Layes*, 132 F.3d at 1251, Meredith did not abuse its discretion in determining that Kecso was not disabled under the plan. In order to be eligible for LTD benefits, Meredith's plan requires a finding that due to an illness or injury, Kecso was unable to perform the material duties of her regular occupation and would be unable to perform similar duties at any other employer. The only evidence suggesting that Kecso was unable to work can be found in Dr. Friedgood's statements in late 2003 and early 2004 that Kecso "is limited by her affective and cognitive response to her brain tumor. She finds it difficult to function and can not work because of these symptoms" and that she

"is disabled by her subjective complaints of headache, fatigue, cognitive complaint." Against this and in support of Meredith's determination, both Dr. Friedgood and Dr. Corey Raffel at the Mayo Clinic released Kecso to return to work without restrictions in early 2003. Dr. Friedgood subsequently certified that Kecso had "no medical restrictions" in March, May, August, October and December of 2003. In November 2003, Dr. Friedgood wrote to Kecso's primary physician that "[Kecso] continues to complain of chronic fatigue and a number of sensory complaints, the exact etiology of which is unknown." In March 2004, in an effort to clarify Kecso's disability status, Meredith's corporate medical director conducted a telephone interview of Dr. Friedgood in which Dr. Friedgood admitted that Kecso had no medical restrictions and appeared to function well at home. Dr. Friedgood stated that he had no objections to Kecso's returning to work on a part-time basis. There is no evidence in the record explaining Dr. Friedgood's vacillating opinion, and the medical records from Kecso's late 2002 and early 2003 visits to the Mayo Clinic suggest that her tumor was not disabling. *See Smith*, 305 F.3d at 795 ("Where the record reflects conflicting medical opinions, the plan administrator does not abuse his discretion in finding that the employee is not disabled."). Viewing the evidence in the light most favorable to Kecso and applying an abuse of discretion standard of review, we conclude that Meredith's decision to terminate Kecso's LTD benefits was reasonable in that it was supported by substantial evidence.

## III.   CONCLUSION

We reverse the district court's grant of summary judgment to Kecso and remand the case for entry of judgment in favor of Meredith.

———————————————————