United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-2055

_____

| | | |
|---|---|---|
| Beverly D. Woo, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Deluxe Corp., Hartford Life Insurance | * | District of Minnesota. |
| Co., doing business as ITT Hartford, | * | |
| Inc., sued as Hartford Life | * | |
| Insurance Co., | * | |
| | * | |
| Appellees. | * | |
| _____ | * | |
| | * | |
| Scleroderma Federation, Scleroderma | * | |
| Federation of Minnesota, Scleroderma | * | |
| Research Foundation, United | * | |
| Scleroderma Foundation, and | * | |
| Thomas Medsger, Jr., M.D., | * | |
| | * | |
| Amicus Curiae. | * | |

_____

Submitted: November 19, 1997
Filed: May 26, 1998

_____

Before BEAM, HEANEY, and JOHN R. GIBSON, Circuit Judges.

_____

BEAM, Circuit Judge.

Beverly Woo appeals the district court's grant of summary judgment to Hartford Life Insurance Company (Hartford) and Deluxe Corporation (Deluxe). Woo brought suit under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B), seeking judicial review of Hartford's denial of her claim for long-term disability benefits. Woo also contends that Deluxe breached its fiduciary duties under ERISA and breached a contract to pay her short-term disability benefits. We affirm in part, reverse in part, and remand for entry of judgment in Woo's favor.

## I.     BACKGROUND

From February 1978 to November 1993, Woo worked at Deluxe where she received numerous promotions because of her exceptional performance. When she resigned from Deluxe, she was the Director of Product Research and Development. Woo achieved professional success despite suffering from multiple sclerosis. From its onset in 1980, her multiple sclerosis remained generally stable and did not significantly interfere with her daily activities. When her multiple sclerosis did relapse, she would recover through medication and rest. She never informed Deluxe of her condition because she did not want her abilities questioned. She also kept her condition a secret from many of her close relatives, including her two children.

In the summer of 1993, Woo began to experience the severe symptoms of another potentially debilitating and fatal disease, systemic scleroderma.[1] Her symptoms

---

[1]Systemic scleroderma is a "disorder of the connective tissue characterized by induration and thickening of the skin, by abnormalities . . . and by fibrotic degenerative changes in various body organs, including the heart, lungs, kidneys, and gastrointestinal tract." Dorland's Illustrated Medical Dictionary 1495 (28th ed. 1994) "The condition is usually slowly progressive over many years, and death is usually due to renal or cardiac failure or to sepsis." Stark v. Weinberger, 497 F.2d 1092, 1094 n.1 (7th Cir.

included severe fatigue, stiff joints, arthritis-like pain, and a loss of concentration and memory. She continued to work during this period, but her duties became increasingly difficult to complete and her performance progressively deteriorated. For example, Woo failed to complete a routine business action plan. Her failure to complete that project prompted a supervisor, who had previously viewed her as a solid and competent worker, to consider changing her job duties. Her condition also compelled her to discontinue her normal practice of bringing work home at night.

In an effort to conserve her energy, Woo significantly limited her non-work activities. For example, she moved her clothes and makeup downstairs, where she took naps in the family room to avoid trips to her second-floor bedroom. Her colleagues at Deluxe also noticed these physical problems. She no longer joined the others for lunch, she had problems using the stairs, she had trouble concentrating, she appeared tired and emotionally drained, she had difficulty completing her projects, and her gait had changed.

As these symptoms progressed, Woo visited various doctors. The record reveals at least ten consultations with physicians between April and November of 1993. During these consultations, Woo complained of common scleroderma symptoms, including, difficulty swallowing, sensory problems, swelling, loss of strength, lack of coordination, ear pain, stiff joints, and trouble walking. However, no diagnosis was made.

There is no record evidence that, prior to leaving Deluxe, Woo asked any of her doctors whether she was disabled. Likewise, her doctors did not volunteer that determination.

---

1974).

On November 5, 1993, Woo resigned from Deluxe. She did not reveal her medical problems during her exit interview, nor did she refer to her medical condition in her departure paperwork. Ron Von De Linde, the Deluxe plant manger who

conducted her exit interview, indicated in his notes that she was leaving to "pursue other opportunities."  On a questionnaire, however, Woo wrote, "In good conscience, I find it inaccurate to call this a voluntary separation on my part."

On February 15, 1994, Woo was finally examined by a doctor experienced in treating people with scleroderma.  Dr. Gerald Mullin immediately diagnosed her condition and stated that, based on his review of her medical records, she had scleroderma symptoms as early as the summer of 1993 and was disabled before leaving Deluxe.  After reviewing his prior notes, Woo's medical records, and Dr. Mullin's records, Woo's treating neurologist, Dr. Randall Schapiro, also concluded that Woo "was disabled from the combination of problems back in September of 1993."

Woo applied for Social Security disability benefits and benefits under the Deluxe Group Long-Term Disability Plan (LTDP).  Woo never formally applied for short-term disability benefits under the Weekly Salary Plan, which is contained in Deluxe's employee handbook.  The Social Security Administration ultimately approved her application for benefits.  Hartford, administrator of the LTDP, denied her claim and two subsequent appeals stating that she was not disabled when she resigned from Deluxe.

On appeal, Woo first asserts that the district court erroneously granted summary judgment on her ERISA claim against Hartford under 29 U.S.C. § 1132 (a)(1)(B) and her alternative claim for breach of fiduciary duty against Deluxe under section 1132 (a)(3). Woo additionally contends that she is entitled to costs and attorneys' fees on her ERISA claims.  Finally, Woo asserts that the district court erroneously granted summary judgment on her contract claim against Deluxe.

## II.    DISCUSSION

### A.    Long-Term Disability Benefits

Woo asserts that she is entitled to disability benefits under the LTDP, which is administered by Hartford and governed by ERISA.  The district court held that Hartford did not abuse its discretion in concluding that Woo was not disabled when she resigned from Deluxe and granted Hartford's motion for summary judgment.

### 1.    Standard of Review

We review a district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party.  See Donaho v. FMC Corp., 74 F.3d 894, 897 (8th Cir. 1996).  Thus, we review de novo the district court's determination of the appropriate standard of review.

ERISA provides a plan beneficiary with the right to judicial review of a benefits determination.  See 29 U.S.C. § 1132(a)(1)(B).  Where a plan gives the administrator "discretionary authority to determine eligibility for benefits," we review the administrator's decision for an abuse of discretion.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Woo does not dispute that the LTDP provides Hartford with discretionary authority to determine benefit eligibility.

Woo asserts that we should not review Hartford's decision under the traditional abuse of discretion standard because of procedural irregularities and because Hartford has a conflict of interest.  To obtain a less deferential review, Woo must present material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to her.  See Buttram v. Central States, S.E. & S.W. Areas Health & Welfare Fund, 76 F.3d 896, 900 (8th Cir. 1996).  To satisfy the second part

of this requirement, Woo must only show that the conflict or procedural irregularity has "some connection to the substantive decision reached." Id. at 901; see also Layes v. Mead Corp., 132 F.3d 1246, 1250 (8th Cir. 1998). Our inquiry thus turns to whether Woo's evidence satisfies this two-part gateway requirement. We find that it does.

Woo presented evidence showing that Hartford has a financial conflict. Deluxe sponsors and funds the LTDP during the first two years of a qualifying disability. After that two-year period, Hartford insures the plan for the remaining period of disability. Accordingly, when Hartford, as plan administrator, denies benefits, it will receive a direct financial benefit as plan insurer, if the disability extends beyond two years. Moreover, Hartford denied Woo's claim without seeking any independent medical review. Under these facts, we find that Woo has shown a sufficient connection between Hartford's financial conflict and the denial of her benefits to trigger a less deferential review. See Buttram, 76 F.3d at 900-01.[2]

Woo additionally presented evidence that Hartford merely had an in-house medical consultant review Woo's claim for benefits. We interpret this as an allegation that Hartford has failed to use proper judgment or thoroughly investigate her claim. See Restatement (Second) of Trusts § 187 cmt. h (1959). Hartford argues that it had no duty to have a scleroderma specialist review her claim because the contemporaneous notes of the physicians that treated her prior to November 5, 1993, made no mention of disability.

However, Hartford was confronted with medical evidence of an uncommon disease and the opinions of two treating physicians stating that, in retrospect, Woo had been disabled from her job before she resigned. We hold that, under these

---

[2]We note that not every funding conflict of interest per se warrants heightened review. For example, an insurer could limit a potential underwriting loss with a retrospective premium, thus decreasing the impact of the financial conflict.

circumstances, Hartford failed to use proper judgment by not having a scleroderma expert review her claim.  See Hightshue v. AIG Life Ins. Co., 135 F.3d 1144, 1148 (7th Cir. 1998).  This serious procedural irregularity also had a sufficient connection to the decision reached to trigger a less deferential review because Hartford's "actual decision was reached without reflection and judgment."  Buttram, 76 F.3d at 901.

Having concluded that Woo has presented evidence warranting a less deferential standard of review, we must next determine what standard to apply.  The Supreme Court has not specifically addressed this issue.  In dicta, the Court has stated, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'"  Firestone, 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)).  Some courts have interpreted this language to mean that a reviewing court will always review for an abuse of discretion, but it will decrease the deference given to the administrator in proportion to the seriousness of the conflict of interest or procedural irregularity.  See, e.g., Chambers v. Family Health Plan Corp., 100 F.3d 818, 825-27 (10th Cir. 1996) (adopting the "sliding scale" approach).  Others presume that the administrator's decision is an abuse of discretion unless the administrator can demonstrate that either (1) under de novo review, the correct result was reached, or (2) the decision was not made to serve the administrator's interest.  See, e.g., Brown v. Blue Cross & Blue Shield, 898 F.2d 1556, 1566-67 (11th Cir. 1990) (adopting the "presumptively void" approach).

Based on our review of Firestone, we adopt the "sliding scale" approach.  This approach more closely comports with Firestone because it requires the courts to apply an abuse of discretion analysis, taking into consideration the conflict or procedural irregularity. The abuse of discretion standard is inherently flexible, which enables reviewing courts to simply adjust for the circumstances.  See Chambers, 100 F.3d at 827.  Moreover, the "sliding scale" analysis also adheres to our decision in Armstrong v. Aetna Life Ins. Co., 128 F.3d 1263, 1265 (8th Cir. 1997), where the egregious

circumstances essentially required the court to give no deference to the administrator's decision. We next review Hartford's decision to deny Woo's claim for benefits under this standard. [3]

## 2. Hartford's Decision to Deny Benefits

Under the traditional abuse of discretion standard, the plan administrator's decision to deny benefits will stand if a reasonable person could have reached a similar decision. See Donaho, 74 F.3d at 899-900. In determining reasonableness, we focus on whether the decision is supported by substantial evidence, which is "more than a scintilla but less than a preponderance." Id. at 900 n.10 (citation and quotation omitted). Thus, applying the "sliding scale" approach, the evidence supporting the plan administrator's decision must increase in proportion to the seriousness of the conflict or procedural irregularity. See Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 233 (4th Cir. 1997). Here, we find Hartford's failure to use proper judgment, when combined with the financial conflict, to be egregious conduct. We will thus require that the record contain substantial evidence bordering on a preponderance to uphold Hartford's decision.

Because Woo did not submit her claim until March 4, 1995, Hartford did not have the opportunity to conduct a medical examination during the insured period. Consequently, Hartford based its decision on Woo's claim form, her medical records, the opinions of her doctors, the papers related to her resignation, the opinion of

---

[3]In light of the district court's failure to apply a less deferential standard of review, remand would ordinarily be appropriate. In this case, however, remand is unnecessary because we find that the record contains the evidence that Hartford relied upon in denying Woo's claim and that evidence not only provides insufficient support for Hartford's decision, but the record contains overwhelming contrary evidence. See Donaho v. FMC Corp., 74 F.3d 894, 901 (8th Cir.1996) (reversing district court and awarding partial benefits).

Hartford's in-house medical consultant, and affidavits from her co-workers at Deluxe. We have thoroughly reviewed the evidence and find it insufficient to support Hartford's determination that Woo was not disabled when she resigned.

The LTDP defines disability as being "prevented by accidental bodily injury or sickness from doing all the material and substantial duties of your own occupation." According to Deluxe's job description manual, Woo's job required her to have a quantitative ability to analyze market research data, strategic planning skills, strong verbal and communication skills, organizational skills, and a "disciplined enthusiasm to balance the creative and practical aspects of the work."

Hartford's decision relies heavily on Woo's failure to mention her condition as a reason for leaving Deluxe. This failure does not support Hartford's position because the record shows that Woo had never disclosed her multiple sclerosis to Deluxe and that she had routinely kept her health problems private. Hartford also relies on the fact that Woo's treating physicians never determined that she was disabled prior to resigning from Deluxe. This evidence similarly provides little support for Hartford's decision because Woo never asked them to determine if she was disabled. This evidence is further diluted by the retrospective disability determinations provided by Dr. Mullin and Dr. Schapiro. See Dodson v. Woodmen of the World Life Ins. Soc'y, 109 F.3d 436, 439 (8th Cir. 1997) (giving more deference to the opinion of a treating physician). Moreover, all of Woo's treating physicians connected the physical problems that she experienced during the insured period to her eventual diagnosis of scleroderma. Despite this medical evidence, Hartford denied her claim without having it reviewed by an appropriate expert. See Gunderson v. W.R. Grace & Co., 874 F.2d 496, 499 (8th Cir. 1989).

For the foregoing reasons, we do not find sufficient support in the record for Hartford's determination that Woo was not disabled when she left Deluxe. We

therefore reverse and remand to the district court with directions to enter a judgment awarding Woo long-term disability benefits.[4]

### B. Short-Term Disability Benefits under the Deluxe Weekly Salary Plan

We review de novo Woo's contention that the district court erred in granting Deluxe summary judgment on her state law claim for short-term disability benefits. See Vrban v. Deere & Co., 129 F.3d 1008, 1009 (8th Cir. 1997). We find no error.

Woo contends that she is entitled to pay under the Weekly Salary Plan, which is contained in Deluxe's employee handbook. However, in order to obtain paid leave for a non-occupational illness, the plan provides that, "[y]ou must notify your manager promptly when you are absent because of illness or injury." The plan also provides that, "[m]anagers must approve or disapprove of all time off in their departments." Assuming that the employee handbook creates a binding contract, we interpret it to require eligible employees to notify their managers promptly of an absence caused by a non-occupational illness before Deluxe has an obligation to pay benefits. Here, Woo failed to notify Deluxe that her absences were due to her illness until, at the earliest, September of 1994. Consequently, Deluxe had no obligation under the Weekly Salary Plan.

## III. CONCLUSION

After reviewing Hartford's denial of Woo's claim for long-term disability benefits under a modified abuse of discretion standard, we find that the decision lacks sufficient support in the record. Accordingly, we reverse and remand to the district court with

---

[4]In light of this holding, we need not address Woo's fiduciary duty claim against Deluxe.

-11-

instructions to enter judgment in favor of Woo. We affirm the district court's judgment with respect to Woo's contract claim against Deluxe.


A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.