# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-4315

_____

| | | |
|---|---|---|
| Mary Glenn; Ernest - Jackson; Lori Marshall; Lane Glenn, | * * * | |
| Appellants, | * * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Life Insurance Company of North America, a Pennsylvania Stock corporation (a part of CIGNA Group Insurance), | * * * * | [PUBLISHED] |
| | * | |
| Appellee. | * | |

_____

Submitted: November 16, 2000

Filed: February 12, 2001

_____

Before BOWMAN, FAGG, and BYE, Circuit Judges.

_____

PER CURIAM.

After Robert Jackson died of a self-inflicted gun shot wound, his beneficiaries sought the proceeds of an accidental death insurance policy covering Jackson and issued to Jackson's employer by Life Insurance Company of North America. The policy excludes benefits for intentionally self-inflicted injuries while sane. The Company denied coverage, concluding there was no evidence Jackson was insane at

the time of his death or that his suicide was accidental. After the Company again denied the claim, the beneficiaries brought this action asserting breach of contract, vexatious refusal to pay, and a claim under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B) . The district court granted summary judgment to the Company, concluding ERISA preempts the state-law breach of contract and vexatious refusal to pay claims, and the Company did not abuse its discretion in failing to pay policy proceeds.

On appeal, the beneficiaries first argue the district court committed error in applying the abuse of discretion standard of review. When, as here, the insurance company that benefits financially from the claim's denial is also the ERISA plan administrator, a less deferential standard of review may apply. See Woo. v. Deluxe Corp., 144 F.3d 1157 (8th Cir. 1998). We do not automatically use a heightened standard of review any time the insurer is also plan administrator, however. See Barnhart v. UNUM Life Ins. Co. of N. Am., 179 F.3d 583, 587, 588 & n.8 (8th Cir. 1999). To obtain the less deferential standard, the beneficiaries must show, under the particular facts and circumstances of the case, that a conflict or procedural irregularity so tainted the process that it caused a serious breach of fiduciary duty. See id. at 588. The beneficiaries have failed to do so.

The beneficiaries informed the Company they believed Jackson was not sane at the time of his death, and hired Dr. William Logan to investigate the circumstances surrounding Jackson's suicide. Dr. Logan concluded "Jackson could not exercise a rational judgment on the question of life or death." A doctor hired by the Company's attorney conducted a thorough investigation and concluded "Jackson was not insane at the time he took his own life." After considering the doctors reports, as well as other evidence, the Company denied the claim on administrative review. The beneficiaries contend the Company should have obtained an independent expert opinion about Jackson's sanity from legal and mental health professionals. See Woo, 144 F.3d at 1161 (insurer's use of only an in-house medical reviewer amounted to a serious breach

of fiduciary duty). The mere fact that the Company reached a decision contrary to the beneficiaries' medical evaluator, when the Company based its decision on substantial evidence in the record, including the report of a medical reviewer outside of the Company, does not give rise to serious doubts about whether the denial was arbitrary. See Sahulka v. Lucent Technologies, Inc., 206 F.3d 763, 768 (8th Cir. 2000). The beneficiaries have not met their burden of showing the financial conflict was connected with the denial of their claim. See id. The district court thus properly reviewed the Company's denial for abuse of discretion.

The beneficiaries also assert ERISA does not apply or preempt the state law claims. We disagree. In their joint motion to stay the case, the beneficiaries stated, "The parties agree that the plan at issue is governed by ERISA, . . . and plaintiffs' claims are regulated by ERISA." Besides, as the district court found, the evidence shows the claims relate to an employee welfare benefit plan under ERISA, and are thus preempted. See Molasky v. Principal Mut. Life Ins. Co., 149 F.3d 881, 884 (8th Cir. 1998) (ERISA preempts claim for breach of contract); In re Life Ins. Co. of N. Am., 857 F.2d 1190, 1194-95 (8th Cir.1988) (ERISA preempts vexatious refusal claim).

We affirm the district court.

BYE, Circuit Judge, dissenting.

The majority concludes that the plaintiff-beneficiaries failed to demonstrate circumstances sufficient to trigger a less deferential standard of review. I disagree. The Company decided to deny benefits based on the opinion of an expert hired *after* litigation commenced, and at the suggestion of defense counsel. Under these circumstances, I believe that we should apply a less deferential standard of review. Giving less deference to the conflicted decision to deny benefits, I would remand. The Company should be required to obtain a truly independent, outside medical opinion about Robert Jackson's sanity before making a benefits determination.

The procurement of independent medical review is a key factor in deciding whether we should apply a less deferential standard of review in cases where the insurer is also the ERISA plan administrator (i.e., conflicted administrator). Compare Woo v. Deluxe Corp., 144 F.3d 1157, 1161-62 (8th Cir. 1998) (applying the sliding scale standard of review where conflicted administrator did not obtain independent medical review) with Barnhart v. UNUM Life Ins. Co. of Am., 179 F.3d 583, 586 (8th Cir. 1999) (refusing to apply the sliding scale approach where conflicted administrator had both a physical therapist and physician perform independent evaluations of claimant), and Schatz v. Mut. of Omaha Ins. Co., 220 F.3d 944, 949 (8th Cir. 2000) (refusing to apply the sliding scale approach where conflicted administrator had an orthopedic specialist perform an independent medical examination of claimant).

The Company's *initial* decision to deny benefits was based solely on an in-house review of Jackson's medical records.[1] The Company's *ultimate* decision was based entirely on Dr. Harry's opinion. Dr. Harry was hired only after the beneficiaries initiated litigation in an attempt to obtain benefits. The Company admits it hired Dr. Harry at the suggestion of defense counsel. The Company acknowledges that it could have requested Unival, an outside medical consultant group, to review the file and give an independent opinion about Jackson's sanity, but the Company declined to do so.

In my view, the majority opinion sets a dangerous precedent. When a conflicted administrator finds itself in litigation after initially denying an award of benefits, it may realize that it failed to use proper judgment or thoroughly investigate the claim. In that situation, the majority's decision allows the conflicted administrator to resort to the testimony of an adversarial litigation expert to justify the earlier benefits denial. We

---

[1]The Company initially denied the claim because Jackson's medical records revealed no treatment for mental health problems. Dr. Logan later opined that the lack of treatment for Jackson's obsessive/compulsive disorder, avoidant personality disorder, and depression was what most likely precipitated the suicide.

don't normally permit fiduciaries to act like this. In the adversarial context, it would be naive to believe that a conflicted administrator won't, inevitably, find a litigation expert to provide the scant evidence required to support a denial. Cf. Schatz, 220 F.3d at 949 (discussing the deferential standard of review).

I would require "substantial evidence bordering on a preponderance to uphold [the Company's] decision." Woo, 144 F.3d at 1162. Under that less deferential standard, I find this record insufficient to support the Company's denial. First, Dr. Logan opined that Jackson was insane at the time of his suicide, and I find that opinion sound. Second, I find it significant that Dr. Harry voiced no criticism of Dr. Logan's conclusions, despite Dr. Harry's adversarial role. Finally, the manner in which Dr. Harry chose to state his ultimate conclusion raises a red flag. Dr. Harry merely listed several factors indicating insanity, followed by a longer list of factors indicating sanity. Dr. Harry then concluded that, "on balance," Jackson wasn't deranged or insane at the time of his death. I question the legitimacy of what appears to be a purely quantitative approach to what is undisputedly a qualitative medical issue.

Under ERISA, a plan administrator must discharge its fiduciary "duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of *providing* benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1) (emphasis added) (internal punctuation omitted). I realize we normally view the decisions of ERISA plan administrators with a great deal of deference. But when the plan administrator doubles as the insurer, and denies benefits, we must be careful not to render § 1104(a)(1)'s directive nugatory. For this reason, as well as those expressed above, I would remand this case and require the Company to obtain and consider a truly independent medical opinion before making a decision about benefits.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.