# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 02-3541

_____

Robert A. Morgan,       *

             Appellee,      *

          v.      *

UNUM Life Insurance Company of America,       *

            Appellant.      *

            Appeal from the United States District Court for the District of Minnesota.

[PUBLISHED]

_____

Submitted: May 15, 2003
Filed: October 22, 2003

_____

Before MORRIS SHEPPARD ARNOLD and HANSEN, Circuit Judges, and READE, District Judge.[1]

_____

HANSEN, Circuit Judge.

This is a case arising under the Employee Retirement Income Security Act of 1974 (ERISA). UNUM Life Insurance Company of America, the insurer and plan administrator, initially awarded long-term disability benefits to Robert A. Morgan on account of his fibromyalgia and insomnia. However, after conducting surveillance

_____

[1] The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, sitting by designation.

of Morgan's activities the following year, UNUM terminated his benefits. Morgan exhausted his administrative remedies and then filed suit.

The district court[2] granted Morgan's motion for summary judgment and denied UNUM's motion for summary judgment. The court reinstated Morgan's disability benefits, awarded him past-due benefits with accrued prejudgment interest, and awarded him costs and attorney fees. UNUM now appeals. For the reasons discussed below, we affirm the judgment of the district court.

I.

Morgan holds a Ph.D. in optical sciences. In April 1994, after he had worked in that field for approximately six years, the Honeywell Technology Center hired him as a Senior Principal Research Scientist in its Photonics Section. During his employment with Honeywell, Morgan was diagnosed with insomnia and fibromyalgia, which impaired his ability to do his job. At various times, Honeywell attempted to accommodate Morgan by placing him on medical leave, reducing his hours, and reducing his duties, but these accommodations were unsuccessful. Morgan stopped working in March 1999 and applied for long-term disability benefits. After an investigation, UNUM agreed in December 1999 that he had become disabled in March and awarded benefits. As part of the investigation, UNUM questioned three doctors who had treated Morgan, Dr. William Tiede, Dr. Samuel Yue, and Dr. Carole Selin, and examined their treatment records. Also, a UNUM benefits specialist interviewed Morgan by telephone, and a UNUM field agent visited him at home.

Dr. Tiede was Morgan's primary-care physician, who treated him continuously beginning in December 1995. Morgan complained of difficulty sleeping at night

---

[2] The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

which significantly impaired his cognitive abilities during the day. Sleep studies confirmed that Morgan had considerable difficulty falling asleep, woke up often during the night, and experienced a poor quality of sleep. Dr. Tiede diagnosed Morgan with chronic and acute insomnia. Morgan also complained of general achiness and severe pains in his neck, back, and joints that contributed to his sleeplessness. Dr. Tiede diagnosed Morgan with fibromyalgia after performing a tender-point test and referred him to Dr. Yue, a pain-management specialist, in April 1998. Dr. Yue confirmed the diagnosis of fibromyalgia by performing a tender-point test and treated Morgan through March 2000. Dr. Yue eventually directed Morgan to stop working because his fatigue and pain made him unable to do his job. Dr. Yue also directed Morgan not to engage in repetitive activity, lift more than twenty pounds, or stay in one position for more than thirty minutes.

While he was under Dr. Tiede's and Dr. Yue's care, Morgan's treatments for his insomnia and fibromyalgia included varying dosages of many different medications, referrals to specialists, dietary restrictions, biofeedback sessions, meditation, light exercise, and participation in an investigational new drug study. None of these treatments satisfactorily resolved Morgan's conditions.

Dr. Selin was a psychologist who treated Morgan for a brief period from January through April 1999. Initially, she agreed that he was suffering from pain disorder associated with fibromyalgia, and she submitted a letter to Honeywell in February stating that Morgan would be unable to work more than two days per week for the next three months. However, Morgan's relationship with Dr. Selin deteriorated and became antagonistic over time. After Morgan stopped seeing Dr. Selin, she advised Dr. Yue that she thought Morgan was dependent on and overusing sedatives. She also opined that she did not believe Morgan was disabled, and that in her view, he was exaggerating his conditions in order to get disability benefits and be able to move out-of-state to live with his teenage daughters.

When a UNUM medical specialist asked Dr. Yue about Dr. Selin's opinion during a telephone conversation, Dr. Yue discounted her opinion, attributing it to a "personality clash" with Morgan.

In Morgan's telephone interview by a UNUM benefits specialist, he described a typical day's activities as including stretching, exercising at a gym for about forty-five minutes, light reading while seated in a chair, and driving his car to run errands. During Morgan's in-person interview by a UNUM field agent, the agent observed him drive his car and sit in a recliner for about an hour. Morgan told the agent that he spent some time each day doing light reading and sitting on his patio. Morgan advised the agent that, per his doctor's advice, he stretched and did light aerobic exercise at a gym. Morgan said that he was able to ride a stationary bicycle, lift light objects, and walk a mile.

After this investigation, UNUM awarded Morgan long-term disability benefits in December 1999, concluding that he had become disabled in March 1999. Morgan also applied for and received Social Security Disability Insurance benefits.

II.

Twice in 2000, UNUM hired an investigator to conduct surveillance of Morgan. At various times during a four-day period in April 2000, the investigator saw him drive and refuel his car, eat lunch at a restaurant, go to the bank and the gym, and carry newspapers and a recycling bin of unknown weight to the end of the driveway at his home. At various times during a three-day period in June 2000, the investigator saw him drive and refuel his car, sit on his patio and read, and stretch and exercise at the gym. Morgan's approximately forty-five minutes of exercise included using a "walking machine" and a "stair stepping machine," riding a stationary bike, and doing sit-ups. The investigator reported that during the two surveillance periods, he saw Morgan bend at the waist, carry various objects (his gym bag, the recycling

4

bin with unknown contents, the newspapers, and a lawn chair) and set up the lawn chair on the patio.

UNUM sent Morgan's file to Dr. Steven Feagin, an in-house physician, for review. Upon reviewing the materials in the file that had been generated in connection with Morgan's successful application for disability benefits, Dr. Feagin expressed skepticism that Morgan was disabled by fibromyalgia and insomnia. Based on the new surveillance evidence added to the file, Dr. Feagin opined that Morgan's activities were incompatible with fibromyalgic impairment. UNUM terminated Morgan's long-term disability benefits in August 2000, relying on Dr. Feagin's opinion in concluding that Morgan was able to perform his job duties.

Morgan filed an administrative appeal. He submitted updated treatment records from Dr. Tiede and Dr. Yue; treatment records from Dr. Barry Cosens, a psychiatrist and sleep specialist who treated Morgan from July 1996 through January 1998; results of a 1997 sleep study, along with analysis by the sleep specialist who reviewed the results, Dr. Salim Kathawalla; results of a 1999 sleep study, along with analysis by the sleep specialist who reviewed the results, Dr. Martin Scharf; a medical journal article pertaining to the investigational new drug study Morgan was participating in for his fibromyalgia-related pain, fatigue, and sleeplessness; and medical literature regarding fibromyalgia. Morgan also furnished letters from Dr. Tiede and Dr. Yue commenting that stretching and light exercise lasting approximately forty-five minutes were not incompatible with a diagnosis of fibromyalgic impairment, and indeed, that such stretching and exercise constituted medically appropriate treatments. Last, Morgan submitted a November 2000 evaluation by Dr. Thomas Misukanis, a neuropsychologist who tested Morgan and opined that he had significant cognitive deficits consistent with fibromyalgia.

UNUM sent Dr. Misukanis's evaluation to their own neuropsychologist, Dr. Glenn Higgins, who pointed out certain flaws in the evaluation and recommended

further investigation. Dr. Higgins did not review the rest of Morgan's file. UNUM denied Morgan's appeal. Dr. Misukanis then submitted a rebuttal report, which UNUM sent to Dr. Higgins for review. Dr. Higgins stood by his earlier conclusions, but noted that he was not commenting on Morgan's physical condition or claimed fibromyalgia because those matters went beyond his area of expertise. After this further review, UNUM upheld its denial of Morgan's appeal.

Morgan then sued UNUM under ERISA. As noted above, the district court granted summary judgment in Morgan's favor, and UNUM now appeals.

III.

When an ERISA plan gives the plan administrator discretion to determine eligibility for benefits (as both parties agree the instant plan does), we ordinarily review the administrator's decision for abuse of discretion. See Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998). The administrator's decision is entitled to less deference, however, if the claimant shows the existence of a serious procedural irregularity that affected the administrator's decision. See id. at 1160-61. In some circumstances, the administrator's use of an in-house physician rather than a specialist to review a disability claim involving an uncommon disease can be a serious procedural irregularity affecting the administrator's decision. Compare id. at 1161 with Clapp v. Citibank, N.A. Disability Plan, 262 F.3d 820, 827-28 (8th Cir. 2001).

The parties quarrel about which standard of review applies here. While our prior cases are not pellucid, we are satisfied that the result in this case is the same under either standard of review. Under the abuse-of-discretion standard, UNUM's decision to terminate Morgan's disability benefits would have to be supported by "substantial evidence"; under the less-deferential standard, UNUM's decision to discontinue Morgan's disability benefits would have to be supported by "evidence bordering on a preponderance." See Woo, 144 F.3d at 1162.

We conclude that substantial evidence does not support UNUM's decision to terminate Morgan's disability benefits in August 2000. When UNUM initially awarded Morgan benefits in December 1999, having determined that he was disabled since March 1999, UNUM already knew through its investigation of Morgan's application for benefits that he routinely engaged in the type of activities that UNUM later observed through surveillance and used as the basis for discontinuing his benefits. Dr. Tiede's and Dr. Yue's treatment records show that Morgan was regularly engaging in light exercise while under their care. In Morgan's telephone interview with the UNUM benefits specialist, he described his typical day as including stretching, exercising at a gym for about forty-five minutes, light reading while seated, and driving. The UNUM field agent who interviewed Morgan in person observed him driving his car, and Morgan told the agent that he routinely stretched and did light aerobic exercise at a gym, he was able to ride a stationary bicycle, he could lift light objects, and he was able to walk a mile.

Thus, UNUM's surveillance--showing Morgan driving his car, eating lunch at a restaurant, carrying light objects, sitting and reading, and stretching and doing light aerobic exercise at the gym for about forty-five minutes--revealed nothing new and was not substantial evidence supporting UNUM's decision to discontinue Morgan's disability benefits. Dr. Feagin's opinion that Morgan's activities shown on the surveillance footage were incompatible with fibromyalgic impairment was also not substantial evidence for several reasons. Dr. Feagin's opinion was directly contrary to the opinions of Morgan's two primary treating physicians, Dr. Tiede and Dr. Yue. Nothing in the record shows that Dr. Feagin had any expertise or experience whatsoever in dealing with fibromyalgia. And Dr. Feagin's opinion on the physical limitations of a person impaired by fibromyalgia was at best tangentially relevant to Morgan's circumstance of being disabled by the cognitive deficits rather than the physical limitations he suffered due to fibromyalgia and insomnia.

Similarly, whatever value Dr. Selin's opinion had, it was known to UNUM at the time it initially determined Morgan was disabled and awarded him benefits. Her opinion was therefore not substantial evidence supporting UNUM's later decision to rescind Morgan's benefits.

Finally, UNUM urges that we should disregard Dr. Misukanis's November 2000 evaluation of Morgan because it was conducted after the August 2000 discontinuation of benefits. We agree, which has the consequence of making Dr. Higgins's critique of Dr. Misukanis's evaluation extraneous, and thus not substantial evidence supporting UNUM's decision to discontinue Morgan's benefits.

IV.

Accordingly, we affirm the district court's judgment in Morgan's favor.

_____