# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1396

_____

Jamie Janssen; Elizabeth Janssen,      *
individually and as parents and natural      *
guardians of Alex Janssen, a minor,      *
Lauren Janssen, a minor, and      *
Abby Janssen,      *
      *
         Plaintiffs - Appellees,      *
      *      Appeal from the United States
        v.      *      District Court for the
      *      District of Minnesota.
      *
Minneapolis Auto Dealers Benefit Fund;      *
Brad Peterson, Trustee; Michael Stanzak,      *
Trustee; Mark Robins, Trustee; Thomas      *
Tweet, Trustee; Bill Ziembo, Trustee;      *
Joyce Nerdahl, Trustee,      *
      *
      *
        Defendants - Appellants.      *

_____

Submitted: November 14, 2005
         Filed: May 19, 2006 (Corrected May 26, 2006)

_____

Before WOLLMAN, FAGG, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

The Janssens brought this action against the Minneapolis Auto Dealers Benefit Fund (the "Plan") alleging an unlawful denial of benefits under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461. The district court[1] granted summary judgment in favor of the plaintiffs. It held that the Plan had waived its right to pursue its claims for reimbursement of medical expenses by failing to defend a motion to dismiss the Plan's subrogation claim in an earlier medical malpractice action. The Plan now brings this timely appeal. We affirm.

I. Background

The Janssens are participants in and beneficiaries of the Plan, a self-funded employee welfare benefit plan governed by ERISA. The Plan provides medical, dental, disability, and other welfare benefits to employees covered by a collective bargaining agreement. Jamie Janssen is an employee participant in the Plan. The remaining plaintiffs are eligible dependents.

In 1995 during a surgical procedure, a nerve in Alex Janssen's face was damaged. The damage resulted in atrophy of his facial muscles. In November 2002, Jamie and Elizabeth Janssen commenced a medical malpractice action on Alex Janssen's behalf. They alleged that the physician who performed the surgery was negligent in failing to monitor and repair the damaged facial nerve. In 2003, Alex underwent multiple corrective surgeries at the Mayo Clinic.

On September 30, 2003, Joseph Crosby, the attorney for the plaintiffs in their medical malpractice suit, sent a letter to the Plan explaining that he was counsel for

---

[1] The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

the Janssens in the malpractice action. He inquired whether the Plan was interested in retaining him to pursue recovery of past medical expenses it paid for Alex Janssen's surgical procedures. Crosby also informed the Plan that the trial date was set for March 2004.

On December 30, 2003, the law firm of Felhaber, Larson, Fenlon & Vogt sent a letter to Crosby informing him that Terrance Cullen of the Felhaber firm represented the Plan. It also stated that the Plan intended to assert a subrogation interest in the amount of $27,963.29. Crosby disclosed the subrogation interest to the medical malpractice defendant in response to an interrogatory served in the malpractice action. Crosby sent a copy of this response to the Felhaber firm with a reminder of the trial date. On February 26, 2004, Crosby sent another letter to Cullen's assistant at the Felhaber firm stating that the malpractice defendants had agreed to stipulate that the medical care received by Alex was necessary, but causation remained in dispute. The Plan did not take any actions to intervene or otherwise pursue its subrogation claim for medical expenses in the malpractice action.

The malpractice trial began on March 1, 2004. The Plan was not represented at the trial. On March 2, 2004, the medical malpractice defendants told Crosby that they planned to move to dismiss the Plan's subrogation claim based on the statute of limitations.[2] The same day, Crosby informed the Felhaber firm of the motion so the Plan could represent its interests. Later that day, Cullen informed Crosby that the Plan believed it was in the Janssens' best interest for Crosby to defend the Plan's subrogation claim. This request by Cullen represented a change in position from the Plan's earlier election not to retain Crosby to pursue its subrogation claim. On March 3, 2004, Crosby sent a fax to Cullen stating that he only represented Alex Janssen and

---

[2]The statute of limitations barred any claims by the parents. However, since Alex was a minor at the time of the alleged malpractice, he could pursue his personal claims at any time up to one year after attaining the age of majority. Minn. Stat. § 541.15(a)(1).

that he would not take a position regarding the motion to dismiss the Plan's subrogation interest.

On March 5, 2004, no one appeared to represent the Plan at the hearing on the motion to dismiss. The motion was granted based on the statute of limitations and the Plan's failure to prosecute.

Following the presentation of evidence, the Janssens settled their malpractice action for $225,000. The settlement did not cover reimbursement of medical expenses. Since Alex was a minor, the settlement agreement was subject to court approval. A hearing for the settlement agreement was set for March 25, 2004.

On March 24, 2004, Cullen's assistant contacted Crosby to inquire about the Plan's subrogation interest. Crosby responded by facsimile, stating that the trial court had dismissed the Plan's subrogation interest at the March 5 motion hearing. He also informed Cullen of the settlement hearing. On March 25, 2004, the settlement hearing was held. Marnie Polhamus attended for the Felhaber firm, but made no objection to the settlement. The settlement agreement was approved.

On March 30, 2004, Crosby received a letter from Cullen objecting to the settlement agreement. Cullen objected to the lack of a provision in the agreement providing subrogation to the Plan. Further, Cullen stated that pursuant to the Summary Plan Description (SPD), the Plan would not pay future benefits to the Janssens until it recovered its subrogation interest.

On April 5, 2004, Cullen sent a letter to the Plan's Trustees. In that letter, Cullen summarized the settlement hearing and subsequent letter to Crosby. The letter did not mention dismissal of the Plan's subrogation interest claim or the fact that the Felhaber firm did not defend the claim at the motion hearing or object to the settlement agreement at the approval hearing. Cullen stated in the letter that it was

unlikely that the Plan would recover its interest from the settlement. Rather, he suggested that the Plan should recover its subrogation interest by denying future medical claims by the Janssens until the Plan was repaid. The letter requested that the Trustees initial the letter if they agreed with Cullen's plan, which they did. On April 7, 2004, Cullen told the Plan's administrative manager to notify Jamie Janssen that claims for future benefits would be denied.

On April 13, 2004, the Plan sent a letter to Jamie Janssen informing him that it had suspended the Janssens' benefits because it did not recover any of its subrogation claim as part of the settlement reached in the Janssens' medical malpractice lawsuit. The letter stated that any new claims would be denied until the total amount of denied claims equaled $29,431.47, the amount the Plan believed it should have received under subrogation. On April 23, 2004, counsel for the Janssens asked the Trustees to review the decision to deny the Janssens' medical benefits. The Plan responded in letters dated April 29 and May 11, 2004, reaffirming its position that benefits would be suspended until the overpayment was resolved.

In May 2004, Jamie Janssen visited the dentist. The dentist submitted an insurance claim to Delta Dental. The claim was denied. When Elizabeth Janssen contacted Trustee Tom Tweet, he informed her that all of the Janssens' benefits had been terminated. On July 14, 2004, the Janssens sent a letter to the Plan demanding reinstatement of their benefits. The Plan responded in a letter again stating that the Janssens had been overpaid by $29,431.47 and that the Plan was entitled to recoup this amount by denying benefits to the Janssens.

On July 30, 2004, the Janssens commenced this lawsuit against the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B) and (a)(3). The Janssens alleged that: 1) the Plan unlawfully denied benefits owed to the Janssens; 2) the Plan breached its fiduciary duty owed to the Janssens; and 3) the Plan failed to comply with certain procedural requirements of ERISA.

-5-

The Janssens brought a motion for summary judgment on their claim that the Plan unlawfully denied benefits. The Plan brought a cross-motion to dismiss, or in the alternative, for summary judgment. The district court granted summary judgment in favor of the Janssens on the first count, finding that the Plan waived its right to pursue its claims for medical expenses by failing to defend the motion to dismiss. It also found that the Plan's subrogation claim was time-barred and that the settlement proceeds represented only payment for Alex Janssen's pain and suffering, not his medical expenses. The district court granted summary judgment in favor of the Plan as to the fiduciary duty claim because that claim sought no relief greater than that claimed by the denial of benefit claim. The district court denied the Plan's motions with respect to the final claim of failure to comply with certain procedural requirements of ERISA. The Plan now brings this timely appeal.

II. Discussion

A. Standard of Review

We review the trial court's grant of summary judgment de novo. Ortlieb v. United HealthCare Choice Plans, 387 F.3d 778, 781 (8th Cir. 2004). On appeal, the Plan and its Trustees argue that we should apply an abuse of discretion standard in reviewing the Plan's denial of benefits because the Plan vests the Trustees with discretion to determine eligibility for benefits and to construe the terms of the Plan.

We apply a de novo standard of review to challenges of a denial of benefits, unless a plan grants its administrator discretionary authority to determine benefit eligibility or construe the terms of the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If a plan gives discretion to a plan administrator, we review the plan administrator's decision for an abuse of discretion. Id. Even where a plan administrator enjoys discretion, a less deferential standard of review is applied if a plan beneficiary "present[s] material, probative evidence demonstrating that (1) a

palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty . . . ." Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998). To meet the second prong of this test, a plan beneficiary "must only show that the conflict or procedural irregularity has 'some connection to the substantive decision reached.'" Id. at 1161 (quoting Buttram v. Cent. States, Se. & Sw. Areas Health & Welfare Fund, 76 F.3d 896, 900 (8th Cir. 1996)).

In this case, a less deferential standard of review is appropriate. The Plan grants the Trustees discretion to interpret the provisions of the Plan. Yet there is no evidence that the Trustees performed a meaningful review prior to the April 13th letter denying the Janssens' benefits. The Plan asserts that the April 5 letter, initialed by the Trustees, is sufficient evidence of meaningful review. We disagree. The Trustees appear to have reached their decision without knowing the circumstances surrounding the Plan's subrogation interest. The Plan claims that it obtained this information from the Janssens in their April 13 letter. The record does not support the Plan's claim that this letter fully informed the Trustees as to the actions, or lack thereof, taken by Cullen to protect the Plan's subrogation interest. The Plan did not explain in its April 13 letter to Jamie Janssen the Plan provisions on which its decision was based, as required by 29 C.F.R. § 2560.503-1(g)(1)(ii). Further, the Plan did not notify the Janssens of their appeal rights as required by 29 C.F.R. § 2560.503-1(g)(1)(iv). Finally, the Plan's failure to act to protect its claimed subrogation interest constitutes a procedural irregularity. The Plan was well-informed of court dates by Crosby. The Plan had notice that it might lose its subrogation interest. These procedural irregularities are connected to the Plan's substantive decision to suspend the Janssens' benefits. Thus, the district court correctly concluded that in making its benefits determination, "sufficient procedural irregularities existed to adopt the 'sliding scale' abuse of discretion standard set forth in Woo." See Woo, 144 F.3d at 1161.

"Under the traditional abuse of discretion standard, the plan administrator's decision to deny benefits will stand if a reasonable person could have reached a similar decision." Id. at 1162. When the "sliding scale" standard is used, "the evidence supporting the plan administrator's decision must increase in proportion to the seriousness of the conflict or procedural irregularity." Id.

B. Reasonableness of the Plan's Decision Under the Sliding Scale Standard

To determine if a plan administrator's interpretation of a plan is reasonable, we consider five factors. Finley v. Special Agents Mut. Benefit Ass'n, 957 F.2d 617, 621 (8th Cir. 1992). Those factors are: 1) whether the interpretation is consistent with the goals of the plan; 2) whether the interpretation renders any language in the plan meaningless or internally inconsistent; 3) whether the interpretation conflicts with the substantive or procedural requirements of ERISA; 4) whether the plan administrator has interpreted the provisions at issue consistently; and 5) whether the interpretation is contrary to the clear language of the plan. Id. Although we consider all of the factors, "significant weight should be given to [] a misinterpretation of unambiguous language in a plan." Lickteig v. Bus. Men's Assurance Co. of Am., 61 F.3d 579, 585 (8th Cir. 1995). Accordingly, we will consider the fifth factor first.

The Trustees' interpretation of the policy was contrary to the clear language of the Plan. The SPD states in section 8.12:

> If a Participant or Dependent has a medical injury, illness, or condition ("condition") that another person, person's insurer, or other plan ("third party") may be liable for (whether or not the third party caused such condition), a claim for reimbursement of your medical expenses may exist against that third party. In this case, the Plan may elect not to pay your medical claims. If the Plan does pay your claims, this Plan has a legal right to pursue (i.e., will be "subrogated" to) claims for medical expenses that requires the Participant or Dependent to . . . ."

The SPD defines subrogation as "the substitution of one person in the place of another with reference to a legal right or claim." The subrogation right in this case only exists as to the Janssens' claims for past medical expenses. The district court correctly noted that under subrogation principles, the Plan "stands in the shoes of [the Janssens] and has no greater rights than [the Janssens have]." Accordingly, the Plan does not have a general right of recovery against the Janssens. Rather, the Plan has only the same rights as the Janssens to pursue claims for medical expenses. Because any possible claim for medical expenses by the Janssens was time-barred, the Plan has no subrogation right to recover medical expenses.

The Plan argues that an ERISA plan may be subrogated to all of a participant's right to recovery, not just medical expenses, citing Waller v. Hormel Foods Corp., 120 F.3d 138 (8th Cir. 1997). The case at bar is distinguishable from Waller. In Waller, the plan was "'subrogated to all rights of recovery.'" Id. at 140. In contrast, here the language of the subrogation clause is limited to recovery of medical expense claims. In addition, the settlement in Waller claimed that any subrogation was contingent upon the release of medical claims by the plan. Id. Based on that contingency, the plan in Waller was entitled to full subrogation rights. That type of settlement contingency is not present here.

Further, the Plan failed to comply with procedural requirements of ERISA. At issue here is whether 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1 were violated. These provisions require a plan to provide adequate written notice of a claim denial. The writing must include specific reasons for the denial as well as notice of a method and reasonable opportunity for full and fair review of the decision. 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1. We agree with the district court that the April 13, 2004 letter informing the Janssens of the denial of future benefits qualifies as a denial letter for purposes of ERISA. Union Pac. R.R. Co. v. Beckham, 138 F.3d 325, 330 (8th Cir. 1998) (stating that a before-the-fact repudiation of benefits qualifies as a denial). The letter clearly states the Plan's intention to deny the Janssens' future benefits. It states,

"[W]e have been instructed by the Trustees to deny payment of any medical claims for you and your dependents until the total amount of such denied claims equals $29,431.47." The April 13 letter, however, does not satisfy the requirements of 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1. It does not explain the reasons behind the denial of benefits, nor does it cite specific plan provisions. The specific reasons for the denial of benefits and citations were only communicated later, following the denial of Jamie Janssen's dental claim in late spring 2004. Additionally, the proper appeals process was not explained in the April 13 letter. It is irrelevant whether the process was explained later; the process must be included in the initial denial letter to comply with ERISA. See King v. Hartford Life and Acc. Ins. Co., 414 F.3d 994, 999-1000 (8th Cir. 2005) (stating that any claim denial must set forth the plan's rationale at the time of the denial and that claims cannot be "sandbagged by after-the-fact plan interpretations devised for purposes of litigation." (quoting Marolt v. Alliant Techsystems, Inc., 146 F.3d 617, 620 (8th Cir. 1998))). This failure to comply with the procedural requirements of ERISA compounds the substantive harm caused by the Trustees' contrary interpretation of the Plan language.

In light of our conclusion that the Trustees' interpretation is contrary to the clear language of the Plan, and in light of the Trustees' failure to comply with the procedural requirements of ERISA, it is unnecessary for us to determine whether the Plan has interpreted the plan language consistently or in accordance with the goals of the Plan. Based on our analysis we conclude that the Plan's decision was unreasonable.

Accordingly, we affirm the decision of the district court.

_____