# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4000

_____

| | | |
|---|---|---|
| Sandra S. Hillery, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Metropolitan Life Insurance Company; | * | Eastern District of Missouri. |
| The Limited Long Term Disability | * | |
| Program; | * | |
| | * | |
| Defendants-Appellees. | * | |

_____

Submitted: May 15, 2006
Filed: July 18, 2006

_____

Before MURPHY, JOHN R. GIBSON, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Metropolitan Life Insurance Company terminated long-term disability benefits to Sandra S. Hillery after determining she was no longer disabled. The district court[1] granted summary judgment for MetLife. Hillery appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

# I.

Hillery was a co-manager of a Victoria's Secret, participating in the Limited Long Term Disability Program. On April 5, 1991, she quit after being diagnosed with Systemic Lupus Erythematosus. In January 1992, she began receiving long-term disability benefits from MetLife. She was continually evaluated by several physicians and rheumatologists over the next ten years, who all reached similar conclusions.

In April 2002, Hillery's doctor noted that her lupus was no longer active, despite a positive ANA. Instead, the doctor explained that most of her problems were due to fibromyalgia. On January 14, 2003, another doctor confirmed this assessment. All the doctors still agreed, however, that she could not return to work. Based on these reports, MetLife ordered additional examinations. On April 1, MetLife's in-house physician, Dr. Greenhood, conducted an independent medical review of Hillery's records. Greenhood agreed with Hillery's doctors for the most part, although he concluded from the records that she only had mild lupus. He could not explain her pain and fatigue, but said her subjective complaints were the result of fibromyalgia, stating: "Most patients that have fibromyalgia are capable of work in the sedentary to light categories." He did not find objective evidence for previous diagnoses of peripheral neuropathy or cognitive deficit. Greenhood concluded Hillery's chances of successfully returning to work were poor based only on her age and the length of time out of work.

MetLife then requested an independent medical examination. Dr. Samudrala reviewed the medical records and physically examined Hillery for 45 minutes. Samudrala noted that she had normal strength, coordination, sensation, reflexes, and gait. There was no acute inflammatory change or swelling in her joints. Further, Samudrala observed four Waddell Signs (of malingering), remarking that she "does not put forth full effort during the clinical examination." Samurala concluded that her subjective complaints were disproportionate to the clinical and laboratory findings,

and that she was capable of light duty work, including 5 hours of sitting, 2 hours of standing, and 1 hour of walking per day.

On September 16, MetLife issued an Employability Assessment Report based on Samudrala's examination. It considered Hillery's age, medical history, motor-skill impairments, education, work history, and proximity to labor markets. The report listed four jobs that she was "realistically qualified to perform within the local economy." On September 18, 2003, MetLife terminated long-term disability benefits based on its determination that she was no longer disabled under the plan.

On March 14, 2004, Hillery submitted a written appeal, attaching new medical records from several doctors. Dr. Esther explained she suffers from several conditions, including SLE and fibromylagia, but that "her [lupus] is controlled with the use of medications." An opthamologist stated that Hillery's dry eyes would require her to take breaks from work every two hours, but that she was capable of sedentary work. An allergist noted that her costochondritis "has not been well controlled" due to peptic ulcer disease and an allergy to sulfa. A neurologist concluded she had "rather severe bilateral sensory motor median neuropathies across the carpal tunnels," but that her lower extremities were normal.

On appeal, MetLife had two different doctors review all of Hillery's medical records, including the new ones. They concluded that the records indicated her lupus was "mild-to-marginal at best and not of a disabling degree given that she has not sustained internal organ damage or involvement." On May 17, 2004, MetLife upheld the termination of benefits.

II.

A grant of summary judgment is reviewed de novo. *See **Barnhart v. UNUM Life Ins. Co. of Am.**,* 179 F.3d 583, 587 (8th Cir. 1999). Summary judgment is

appropriate if the evidence, viewed most favorably to the nonmovant, shows no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. **Fed. R. Civ. P. 56(c)**. This court reviews de novo a district court's determination of the appropriate standard of review under ERISA. *See UNUM*, 179 F.3d at 587.

The district court used an abuse of discretion standard. *See McGee v. Reliance Standard Life Ins. Co.*, 360 F.3d 921, 924 (8th Cir. 2004). "[T]he plan administrator's decision to deny benefits will stand if a reasonable person could have reached a similar decision." *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1162 (8th Cir. 1998). A reasonable decision is one supported by substantial evidence, which is more than a scintilla but less than a preponderance. *Id.* The parties agree this is the correct standard, although Hillery argues a less deferential standard should apply because there is "a palpable conflict of interest or a serious procedural irregularity" which "cause[d] a serious breach of the plan administrator's fiduciary duty" to her.[2] *Id.* at 1160–61.

Hillery alleges four procedural irregularities: 1) MetLife failed to review or consider all of Hillery's medical information; 2) the independent medical examination was perfunctory; 3) MetLife made false or inaccurate statements; and 4) MetLife failed to consider her treating physicians' opinions or her subjective complaints of pain. The mere presence of procedural irregularities, however, does not warrant the less deferential standard. *See McGarrah v. Hartford Life Ins. Co.*, 234 F.3d 1026, 1031 (8th Cir. 2000). "A claimant must offer evidence that 'gives rise to serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim' for us to apply the less deferential standard." *Chronister v.*

---

[2]MetLife claims Hillery is precluded from raising this argument for the first time on appeal. However, she raised the issue before the district court on page 13 of her "Memorandum in Support of Plaintiff's Motion for Summary Judgment," filed June 20, 2005.

***Baptist Health***, 442 F.3d 648, 654 (8th Cir. 2006), *quoting **Woo***, 144 F.3d at 1160. To invoke this standard, any alleged procedural irregularity must be so egregious that it might create a "total lack of faith in the integrity of the decision making process." ***Layes v. Mead Corp.***, 132 F.3d 1246, 1251 (8th Cir. 1998).

First, Hillery claims MetLife breached its fiduciary duty by not reviewing all of her relevant medical information. The record, though, illustrates MetLife did consider all relevant information. In a letter of July 30, 2003, Dr. Samudrala summarizes the "[e]xtensive documents mailed to me and also those brought by the claimant." Additionally, two letters, both dated May 6, 2004, from Dr. Lumpkins and Dr. Jares, list numerous and extensive physician reports from throughout Hillery's disability that were reviewed. Thus, there is ample evidence that MetLife reviewed and considered Hillery's entire medical record before making its final decision. The one record that possibly supports her argument is Dr. Greenhood's April 1, 2003, "Physician Consultant Review," which lists only reviewed material dating back to 1999. However, this irregularity is not so egregious as to create a total lack of faith in the integrity of the decisionmaking process, especially considering the extensive documentation provided overall. Therefore, it does not warrant application of the less deferential standard.

Next, Hillery argues MetLife breached its duty by performing only a perfunctory, 45-minute independent medical examination, which cannot amount to substantial evidence. She also asserts that MetLife improperly relied on Samudrala's false and inaccurate statements, and that a physiatrist, such as Dr. Samudrala, is unqualified to determine whether a person has the physical capabilities to perform sedentary to light job duties. She cites no authority for these propositions. Contrary to her claims, Samudrala considered Hillery's subjective complaints and conducted a reasonable physical examination, as well as a motor examination and functional assessment. She also reviewed numerous documents, provided by both MetLife and Hillery, regarding her medical history. Samudrala's conclusions were not entirely

inconsistent with other physicians' earlier impressions, and paralleled the opinions of doctors Greehood, Lumpkins, and Jares. There is no evidence either that it is unusual for physiatrists to conduct these types of examinations, or that Samudrala made false or inaccurate statements. Thus, Hillery cannot show that MetLife acted dishonestly or from improper motive when using Samudrala's report as part of its decisionmaking process. *See **Neumann v. AT&T Commc'ns, Inc.***, 376 F.3d 773, 781 (8th Cir. 2004) (describing requirements for less deferential standard to apply); *see also **Pralutsky v. Metro. Life Ins. Co.***, 435 F.3d 833, 838 (8th Cir. 2006).

Finally, Hillery claims MetLife failed to consider her treating physicians' opinions and her subjective complaints of pain. However, the record shows her medical records and her subjective complaints were reviewed by several physicians. In fact, it was the reports of her treating physicians indicating her lupus was inactive that caused MetLife to review her status. She argues, though, that a plan administrator cannot deny benefits based solely on the absence of medical evidence. *See **House v. Paul Revere Life Ins. Co.***, 241 F.3d 1045, 1048 (8th Cir. 2001). But, this is not a case where the plan administrator possessed only a scintilla of evidence; the medical opinions of several physicians supported MetLife's decision, and MetLife included the treating physicians' reports in making its determination. In any event, MetLife is not required to defer to her treating physicians. *See **Black & Decker Disability Plan v. Nord***, 538 U.S. 822, 830–32 (2003).

There is neither evidence that the termination of long-term benefits was a product of an arbitrary decision of the plan administrator's whim, nor any procedural irregularity so egregious that it created a total lack of faith in the integrity of the decisionmaking process. Thus, the less deferential standard does not apply and this court reviews for abuse of discretion.

Under section 2.26 of Hillery's long-term disability plan, a participant is totally disabled if the participant:

(a)     is under the regular care of a Physician; and

(b)     as a result of an Illness/Injury having an Onset Date while the Participant is a Participant;

> (i)     during the twelve (12) months immediately following the Benefit Commencement Date, the Participant is unable to perform any and every duty related to the Participant's regular occupation in which he or she was engaged immediately prior to the occurrence of the Illness/Injury;

> (ii)    thereafter, the Participant cannot work at any gainful occupation for which the Participant is reasonably qualified, or could become qualified, by education, experience or training.

Given this definition of "totally disabled," MetLife had substantial evidence that Hillery could work at *any* gainful occupation for which she is reasonably qualified or could become qualified. The examinations and reports from doctors Samudrala, Lumpkins, Jares, and Greenhood – as well as the conclusions of some of Hillery's treating physicians – permit a reasonable person to reach a similar decision: that she was no longer totally disabled under the terms of the plan. Therefore, MetLife did not abuse its discretion by terminating her long-term disability benefits.

## III.

Hillery also asserts that MetLife breached its fiduciary duty when it did not consider her age and her length of unemployment. As she concedes, there is no Eighth Circuit or ERISA requirement that a plan administrator consider age, if not specifically required by the plan. And while she argues, without providing any evidence, that very few employers will hire a 54-year-old woman, the plan's plain

-7-

language states that a person be able only to work a job for which she is, or can become, qualified. The plan does not speak to the difficulty of getting that job. However, in the end, it does not matter because the record reflects that MetLife's "Employability Assessment Report" did note and consider her age and time off, as well as her previous work history and Dr. Samudrala's conclusions about her physical limitations.

## IV.

The judgment of the district court is affirmed.

_____