# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3852

_____

| | | |
|---|---|---|
| Patrick Torres, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| UNUM Life Insurance Company of | * | |
| America, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: October 22, 2004
Filed: April 26, 2005

_____

Before MORRIS SHEPPARD ARNOLD, JOHN R. GIBSON, and SMITH, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Patrick Torres appeals from the summary judgment order entered on behalf of UNUM Life Insurance Company of America in this suit to enforce his rights under a long-term disability plan issued and administered by UNUM. UNUM denied Torres's application for benefits. After exhausting his administrative remedies, Torres brought this action under the Employee Retirement Income Security Act of 1974 (ERISA). Because the record reveals that UNUM abused its discretion in denying Torres's application, we reverse.

## TORRES'S EMPLOYMENT AND MEDICAL CONDITION

Torres worked as a clinical perfusionist for nineteen years. A perfusionist is a surgical room technologist who operates the heart-lung machine during cardiopulmonary bypass. *Dorland's Illustrated Medical Dictionary* (29th ed. 2000). He spent the last six years at Rapid City Regional Hospital where he practiced under the supervision of the primary surgeon in the operating room and, ultimately, under the hospital's Director of Surgery.

In May 1998, the hospital suspended Torres from his job because he had suffered hearing loss. On May 19, Torres was examined by an audiologist at Mountain Plains Audiology Associates. Torres reported that he had been gradually losing his hearing since 1972, and he was very concerned about the loss and the difficulty it caused in communicating. He had tried a hearing aid several years before but had returned it because it amplified unwanted sounds and did not improve his ability to hear in noisy settings. His examination revealed that he had a high frequency impairment of moderate to moderately severe for his left ear and severe for his right ear. The audiologist wrote, "With this man's type and degree of hearing loss, it would be typical for him to experience difficulty with speech discrimination ability in situations where background noise is present." He recommended that Torres try a hearing aid again, and Torres agreed.

One month later, Torres was also examined by an otorhinolaryngologist, Dr. Gary Carlson. Dr. Carlson agreed with the recommendation of a hearing aid. Torres obtained two hearing aids but eventually settled on wearing only one of them to avoid "white light noise" but still be able to hear the doctors' requests in the operating room.

The record does not indicate when or how Torres's 1998 job suspension ended. The next event of note occurred in March 2000 when Torres was admitted to the

hospital and diagnosed with congestive heart failure and cardiomyopathy. He remained in the hospital for five days and, upon his discharge, was told not to return to work until further notice. He began seeing a cardiologist, Dr. Drew Purdy, on April 11, 2000. Dr. Purdy adjusted his medication, directed him to continue with the exercise he had been doing, and discussed the benefits of getting Torres returned to work at some point at a reduced number of hours and with realistic responsibilities. At his next appointment three weeks later, Dr. Purdy opined that he should be able to return to his regular job but not be on call. The record does not reveal when he did return to work.

Torres continued to see Dr. Purdy throughout the time relevant to this appeal. In April 2001, Dr. Purdy noted that the medications prescribed for his heart problems intermittently caused Torres to get "somewhat lightheaded or dizzy." The following month, just after his discharge from employment, Dr. Purdy adjusted Torres's medication and cautioned him that he may need to discontinue one type[1] if he became hypotensive or progressively lethargic or fatigued.

On April 5, 2001, Torres was called to a meeting with his department manager, Marcia Taylor, to discuss three items: continuing concern over his performance, specifically with respect to "keeping attention through the process of the case;" concern as to his "overall safe clinical decision-making in crises times;" and a request by a surgeon that he "not pump cases independently because of lack of response to patient status at any given moment and concern of safe and timely perfusion intervention during crises situations." Ms. Taylor urged him to consider other employment opportunities. They met again on April 16, when she agreed to place him for two weeks in a perfusion assistant position with fewer responsibilities and at a lower salary. At the conclusion of that two-week period, they were to meet again

---

[1]The medication is Prinivil which, according to pharmacy records, is an ACE inhibitor used to treat congestive heart disease.

"to sign [Torres's] termination papers." Although the parties describe the termination of his employment in different terms, the record contains an executed copy of his notice of resignation which cites "plans for other job opportunities" as the reason for Torres's resignation.

## TORRES'S APPLICATION FOR BENEFITS

Five days before he resigned his employment,[2] Torres filed a claim for long-term disability benefits under the UNUM policy.[3] In it, he stated that he was unable to work at his present job because he could not hear the surgeon correctly when he was surrounded by "white noise" in the operating room. He listed two audiologists and his cardiologist, Dr. Purdy, as having provided medical attention for his disabling condition. One of the audiologists and Dr. Purdy each completed a Physician's Statement in connection with his claim. The audiologist reported findings of "severe high frequency sensorineural hearing loss in both ears," and noted that Torres may find it "difficult to hear with noise going on around him." He also indicated that Torres had reached maximum medical improvement for his hearing condition. Dr. Purdy listed restrictions against lifting, pushing, or pulling anything over fifty pounds and noted that Torres is limited by fatigue, drowsiness, and blurred vision.

The UNUM policy defines "disability:"

You are disabled when UNUM determines that due to sickness or injury:

---

[2]UNUM also argues that Torres was not covered under the plan once his employment ended. The company did not deny his application on that account, but it did state in its letter denying his appeal that he was not a covered employee. Torres applied for the benefits while he was still employed by the hospital and he claims that his disability prevented him from continued work as a perfusionist.

[3]Torres enrolled in the long-term disability plan in 1996. Under its terms, the employee pays the entire premium.

- you are unable to perform with reasonable continuity and in the usual and customary manner the substantial and material acts of your occupation, business or profession; and
- you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

UNUM denied Torres's claim on August 2, 2001, after determining that he was not disabled and unable to perform the material and substantial duties of his occupation as a perfusionist. The record documents the information UNUM reviewed in considering Torres's claim and its handling of that information.

Bob Callahan is the UNUM employee who was in charge of Torres's claim. On June 18, 2001, he sought review of the claim by Diane Case, another UNUM employee whose title is not identified. Three days later, she responded. She found it difficult to assess whether the medical information would qualify him as disabled. She agreed that the clinical data supported a significant diagnosis of hearing loss but felt that a physician should address the level of impairment as related to his occupation. Finally, she noted that she had not been provided with Torres's cardiac records and suggested that the cardiac unit review those. She referred the case to an in-house doctor, Dr. Horne, for her opinion as to whether Torres's hearing loss appeared significant enough to support the limitations listed by the audiologist.

Dr. Horne did not reply, but instead the file contains a response from Dr. Joseph Sentef of the family and occupational medicine unit. Although he does not list the documents he reviewed, his one-page recitation suggests that he read the audiologists' reports and a memo concerning Torres's April 5 meeting with his supervisor. On June 29, Dr. Sentef wrote:

The claimant's hearing problems occur at high frequencies with a noisy background. The claimant was given two hearing aids to improve his hearing in his job. I do not know if he works in the operating room with a noisy background. It would appear that in most operating rooms the

noise level would be low. He also noted in the medical records, that he only wore one hearing aid so he could hear the surgeons. From that statement alone, it appears he is able to hear the surgeons by using only one hearing aid. This would point more towards a performance issue. If his problems had been secondary to hearing, he would have worn both hearing aids for maximum auditory effect. The claimant had worked with his hearing aids during the past year. The issue of decreased hearing had not come up from the hospital personnel over the past year span. It would appear that his termination from his job was more of a performance issue, based on objective findings in the medical records along with audiogram analysis. It would appear the hearing loss is not enough to warrant the restrictions and limitations.

Dr. Sentef was not asked to and did not address Torres's cardiac condition. Based only on Dr. Sentef's assessment, Bob Callahan recommended on July 3 that Torres's claim be denied for lack of medical evidence supporting disability. In his recommendation, he repeated Dr. Sentef's speculation that Torres's terminated employment was "a performance issue not related to his condition but rather other issues." An unidentified UNUM consultant wrote on the same sheet that UNUM should obtain Torres's cardiac records and have them reviewed by the cardiac unit, and also get an occupational analysis to compare his restrictions and limitations with the occupational requirements. UNUM then ordered Torres's records from Dr. Purdy and from his hospitalization, and they asked Dr. Purdy to complete a Physical Capacities form. Dr. Purdy did not complete that form until several months later.

Bob Callahan apparently reviewed the cardiac records and once again recommended that benefits be denied. On July 25, he wrote: "Based on additional cardiac records received & reviewed it doesn't appear condition precludes him from performing own occ. Recommend denial based on medical does not support disability." In the same handwriting as appeared on Callahan's July 3 recommendation of denial, an unidentified UNUM employee recommended that the claim be "walked in" to a cardiac physician to confirm if any cardiac restrictions and

limitations are supported, and again recommended that they obtain an occupational analysis if Torres was restricted to lifting no more than fifty pounds. That same day, a "Medical Review Walk-in" form was completed by UNUM employee Shirley Yeager. Ms. Yeager wrote: "The file documentation does not support [restrictions and limitations] from a cardiac standpoint."

Dr. E.C. Curtis, a UNUM doctor who is a certified consultant in occupational medicine, also reviewed Torres's claim in a July 25 report. He stated that his report was "based on a brief, selective review of documentation that appears to be the most relevant to the issue of his functional abilities to perform his occupation." In less than a page, he summarized the unidentified documents and concluded that Torres had not "firmly established" the medical necessity for his continuing absence from work. Based on Dr. Curtis's report, Callahan once again recommended denial of Torres's claim. A UNUM consultant agreed with the recommendation, and Callahan sent the denial letter on August 2. UNUM denied the claim because it found there was no medical evidence to support Dr. Purdy's restrictions and limitations, and no physical limitations had been imposed as a result of his hearing loss "except if there is a lot of noise around you."

Torres appealed the denial and submitted additional medical support for his claim, including reports from an ENT doctor and Dr. Purdy, drug information sheets concerning the medications prescribed to treat his heart condition, a description of his working conditions in the heart surgery operating room, and a denial letter for health insurance based on his cardiac problems. UNUM received these items on October 22.[4]

---

[4] UNUM also received Dr. Purdy's completed form and letter directly from Dr. Purdy on October 5.

The appeal documents included Dr. Purdy's completed Physical Capacities form in which he noted that the medications may lower Torres's blood pressure and cause lightheadedness, fainting, and dizziness. In a separate letter, Dr. Purdy also noted that Torres had experienced episodic confusion and prolonged fatigue. Dr. Carlson, the ENT who first saw Torres in 1998, examined him again in August 2001. He opined that Torres could have significant problems hearing and understanding because of the noise levels in the operating room, and he thought it no longer reasonable for Torres to work as a perfusionist.

On October 11, Callahan asked Shirley Yeager to review Dr. Purdy's letter and Physical Capacities form and determine if his restrictions and limitations were supported. In notes dated October 22, she erroneously concluded that the symptoms, restrictions, and limitations Dr. Purdy described in his September documents were new. Because she believed they were new, she concluded that they were not supported. At the bottom of Yeager's notes, Dr. Thomas Hashaway wrote three sentences, the third of which concluded that there was no cardiovascular basis for impairment. He also directed Callahan to Yeager's summary in a note on the bottom of Callahan's October 11 review request.

On November 13, UNUM also requested that Dr. Laird Caruthers, an in-house family practitioner, review the new medical records and offer his opinion on the claim from a general medical standpoint and specifically answer whether Torres's hearing loss would preclude him from remaining in his occupation. Before Dr. Caruthers conducted that review, Torres submitted an evaluation conducted by a certified vocational evaluator at the Department of Veteran Affairs who expressed her "professional opinion that [Torres's] employment as a Perfusionist could have significant liability consequences to him and his employer based on the knowledge of his inability to hear directions clearly. . . . According to research, it is impossible to 'filter out' the background sounds as the machines, etc. are required for life sustaining of the patient." She also noted that Torres had been diagnosed with sleep

apnea and concluded that this condition, along with his hearing loss, physical limitations, and the side effects of his medications suggested that he was unable to meet the demands of a perfusionist because of his significantly compromised abilities. She concluded the assessment part of her report by writing:

> Based on total assessment including review of medical information, job requirements, etc., it is this counselor's opinion that return to employment as a Perfusionist is not feasible. The degree of hearing loss and the significant consequences of inaccurate hearing/interpretation of directions in the surgical setting could result in legal issues. [Torres] also does not meet the physical requirements of the job based on the limitations as documented by physician. Also of concern are the side effects of his medications as described previously.

UNUM never conducted an in-house review of this vocational report.

On January 14, 2002, family practitioner Caruthers conducted the final UNUM medical review that he had been asked to complete two months earlier. Dr. Caruthers summarized the history of UNUM's consideration of the claim but did not review any of Torres's medical records. He acknowledged the vocational report and described it as concluding that Torres could not continue in his occupation because of his hearing problems. He wrote:

> There are performance issues and conflicts with the employer as well as reference to a problem with alcohol use (? on the job) and a reference to an unspecified legal problem. It might be useful to explore these issues further with claimant's employer. Claimant was fired then put in a claim for disability. There does not appear to be medical documentation to support a work capacity impairment. There is no evidence of any change in his condition to warrant a sudden declaration of disability, but I will defer comments about claimant's ability to do his particular occupation to our vocational consultant.

Dr. Caruthers's entry is remarkable for the innuendo, misstatements, and unsupported conclusions it contains. This ultimate medical review in UNUM's consideration of Torres's appeal contains at least four red flags. First, Torres's claim file contains no evidence of conflicts with his employer. Dr. Caruthers's statement is completely unsupported. Second, his speculation about Torres using alcohol while at work is also unsupported. Alcohol is mentioned once in Torres's medical records, in the March 23, 2000, History and Physical taken upon his hospital admission which states: "He has used alcohol in the past but stopped in July [1999]." When Dr. Purdy sent copies of his medical records to UNUM, the documents included a May 8, 2000, personal letter he wrote to a judge in Rapid City. The letter is a character reference for Torres. It concludes with Dr. Purdy stating that he knows Torres feels deep regret and considerable embarrassment over an episode which resulted in charges concerning his alcohol use. Dr. Purdy did not explain his statement, and his description of Torres's medical condition makes no mention of alcohol use.

Once in UNUM's file, Dr. Purdy's letter was flagged with an arrow and given great attention. Dr. Curtis, the UNUM occupational medicine doctor, apparently used it as the basis for a comment in his July 25, 2001, review. He wrote: "Incidentally, as a matter of interest, in view of information in the chart concerning problems Mr. Torres faces related to alcohol abuse, one wonders whether that may have been an element in the development of cardiomyopathy per se and/or a factor in his performance difficulties." The record contains no mention of alcohol abuse by Torres, and UNUM did nothing to investigate any possible relationship between alcohol use and Torres's heart problems. In her October 22, 2001, records review, Yeager repeats the statements concerning alcohol use from Dr. Purdy's letter. At the bottom of Yeager's notes, family practitioner Hashaway wrote: "The improving ejection fraction suggests that the claimant had a reversible etiology for his congestive cardiomyopathy (? alcohol)." Again, UNUM did nothing to try to determine if there was any causal relationship between Torres's alcohol use and his cardiac problems.

The third red flag in Caruthers's review is the sequence and description of Torres's application for benefits and end of his employment. Caruthers states: "Claimant was fired then put in a claim for disability." The record shows that Torres filed his claim with his employer as directed on April 26, 2001. Once the administrator received supporting documents such as Torres's release of records form, physicians' statements, and the employer's statement, it forwarded the entire package to UNUM. UNUM originally recorded Torres's date of disability as April 16, 2001, but, after learning that his employment continued until the end of the month, UNUM changed Torres's date of disability to May 1, 2001. Moreover, UNUM received copies of Torres's notice of resignation and the hospital's form acknowledging that act. There is no employment record in the file that suggests Torres was fired.

The final problem area in Caruthers's summary concerns Torres's vocational prospects. In spite of Caruthers's inconclusiveness, UNUM did not refer Torres's appeal to its vocational consultant. UNUM conducted no review of Torres's vocational report.

Following the Caruthers report, UNUM did not seek any further medical evidence concerning Torres's cardiac problems. UNUM conducted one last inquiry concerning Torres's performance in a February 7, 2002, telephone call to the hospital's human resources department. A handwritten note in the file reports that the hospital employee stated "off the record there may have been a mental issue," and that Torres blamed his performance on health issues but not on hearing problems. That is the extent of UNUM's inquiry into Torres's job performance throughout their consideration of his claim and appeal.

That same day, UNUM sent Torres a letter denying his appeal. The letter was devoted primarily to repeating UNUM's handling of the claim, but its description of the review UNUM conducted when Torres appealed the denial of benefits is

inaccurate. The letter recited that UNUM received the new medical and drug information Torres submitted on October 22 as part of his appeal and that it "was reviewed in conjunction with his entire claim file" by a board certified internist/cardiologist on October 23, 2001. That was the review by Hashaway. He did not review any of the new information, however, as UNUM did not begin processing the new documents until October 31.

UNUM's denial letter continued with an excerpt from Caruthers's January 14 medical review and concluded by informing Torres that he did not meet the definition of disability because "restrictions and limitations are not supported to the degree to preclude performing in his occupation." In addition, UNUM informed Torres that he was not a covered employee and was thus ineligible for disability benefits because he had been fired and no restrictions and limitations were supported as of that date.

UNUM's denial of Torres's appeal marked the end of his administrative review. Torres filed this action two months later.

I.

We review de novo the district court's grant of summary judgment while viewing the record in the light most favorable to Torres. We also review de novo the district court's determination of the appropriate standard of review of the administrator's denial of benefits. Barnhart v. UNUM Life Ins. Co. of Am., 179 F.3d 583, 587 (8th Cir. 1999).

The district court reviewed UNUM's decision under the abuse of discretion standard that applies when the plan at issue allows the administrator the discretionary authority to determine a claimant's eligibility for benefits. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Torres concedes that the UNUM plan grants such authority but argues that a less deferential standard is appropriate

under <u>Woo v. Deluxe Corp.</u>, 144 F.3d 1157, 1160-61 (8th Cir. 1998), because he presented evidence demonstrating that a palpable conflict of interest and a serious procedural irregularity existed which caused UNUM to deny Torres benefits. The conflict of interest he asserts is a financial one because UNUM administers and funds the long-term disability plan in which Torres was enrolled. The procedural irregularity he alleges is UNUM's failure to exercise proper judgment in its deliberations as demonstrated by the shortcomings in its medical and vocational review.

UNUM admits that it serves as both insurer and administrator of the long-term disability plan at issue. We have held this to be palpable evidence of a conflict of interest. <u>Farfalla v. Mut. of Omaha Ins. Co.</u>, 324 F.3d 971, 973 (8th Cir. 2003); <u>Phillips-Foster v. UNUM Life Ins. Co. of Am.</u>, 302 F.3d 785, 795 (8th Cir. 2002); <u>Schatz v. Mut. of Omaha Ins. Co.</u>, 220 F.3d 944, 947-48 (8th Cir. 2000). <u>But see</u> <u>McGarrah v. Hartford Life Ins. Co.</u>, 234 F.3d 1026, 1030 (8th Cir. 2000) (wrong to assume financial conflict of interest from fact that plan administrator is also insurer).

Torres also alleges substantial procedural irregularities in UNUM's consideration of Torres's claim. Torres points to several inadequacies: UNUM sought no independent medical review, did not consider Torres's earlier suspension for hearing loss, did not evaluate the side effects of his heart medications, did not have a review performed by a vocational consultant, and provided no theory for why Torres suddenly became unable to perform his job other than an alcohol abuse theory unsupported by the record. UNUM asserts that it conducted a complete and appropriate medical review and denies that its decision had anything to do with alcohol use.[5]

_____

[5]In its brief, UNUM's counsel adopts a much different tone than that used in the company's internal memos. In the memos, a mention of past alcohol use in a personal letter from Dr. Purdy was inflated to statements that Torres could be abusing alcohol while at work. The brief denies that alcohol was the basis for the denial of

The UNUM plan imposed no obligation on the administrator to obtain an independent medical review and case law contains no such absolute requirement. Torres's earlier suspension for hearing loss may have been of interest, but the medical issues underlying the suspension are the only relevant facts. UNUM was not required to articulate a theory for Torres's inability to perform his job, but rather was to consider the evidence Torres submitted to determine whether it proved him disabled.

UNUM's failure to acknowledge the side effects of the prescription drugs Torres was taking for his cardiac condition and failure to obtain a vocational evaluation are significant omissions. As Torres explained, his ejection fraction had improved because he was taking the medications, but the price he paid for improved heart function was that he suffered side effects including dizziness, fatigue, and lightheadedness. Dr. Caruthers specifically excluded the drug information sheets from his January 14, 2002, medical review because he believed Dr. Hashaway (UNUM's cardiologist) had already discussed them. Hashaway made his three-sentence review of Torres's medical records without having seen the drug information sheets. Because the side effects of necessary medication caused many of the problems that kept Torres from being able to perform the job of perfusionist, UNUM had an obligation to address those effects.

Likewise, as its employees noted on at least three occasions throughout the review process, including a comment by Caruthers in UNUM's final medical review, UNUM could not evaluate Torres's ability to perform his occupation without the opinion of a vocational consultant. UNUM offers no reason for its failure to obtain such an evaluation or to respond in any way to the comprehensive vocational evaluation Torres submitted.

---

benefits because "alcohol disabilities are not even excluded in the Plan." The possibility that alcohol problems could be a basis for awarding long-term disability benefits explains the inconsistency.

-14-

UNUM's policy defines disability in relation to a participant's ability to perform "with reasonable continuity and in the usual and customary manner the substantial and material acts" of the participant's occupation. UNUM did nothing to determine the "substantial and material acts" of the occupation of perfusion, particularly with regard to the noise level attendant to the kind of surgical rooms in which perfusionists work. UNUM's failure to consider the effects of Torres's medication and to assess his ability to perform the substantial and material acts of perfusion are serious procedural irregularities.

The existence of a palpable conflict of interest and serious procedural irregularities does not necessarily mean that we will apply a less deferential standard of review. Torres must also satisfy the second part of the Woo test which requires him to show how the conflict of interest or serious procedural irregularity caused a serious breach of UNUM's fiduciary duty. He would do so by showing that the conflict or irregularity has "some connection to the substantive decision reached." Woo, 144 F.3d at 1160-61. We have recognized that this requirement "presents a considerable hurdle" for plaintiffs, Barnhart, 179 F.3d at 588 n.9, and we are aware of only two cases that have satisfied the second part of the Woo test.

In Morgan v. Contractors, Laborers, Teamsters & Eng'rs Pension Plan, 287 F.3d 716 (8th Cir. 2002), we determined that trustees of a pension plan violated plan provisions by withholding relevant information from the claimant before his appeal hearing and denying his claim based on their own "preconceptions and personal observations." 287 F.3d at 722-23. This violation was a procedural irregularity, and we concluded that it caused a serious breach of the trustees' duty to the claimant because they voted based on their predispositions rather than objectively analyzing evidence and employing proper judgment and reflection based on such evidence. Id. at 723. We reviewed the trustees' decision de novo, reversed the judgment, and remanded with directions to enter judgment in favor of the claimant. Id. at 723, 725.

In Harden v. Am. Express Fin. Corp., 384 F.3d 498 (8th Cir. 2004), the claimant applied for long-term disability benefits and was denied initially and on appeal. MetLife, the plan administrator, required him to apply for Social Security disability in conjunction with his application for plan benefits, and his Social Security application was successful. Id. at 499. MetLife led Harden to believe that his Social Security medical records were part of the administrative record it was considering, but in fact the administrator had never obtained those records. Id. at 499-500. We concluded that its failure amounted to a serious procedural irregularity that raised significant doubts about the decision to deny benefits. Id. Although the Harden case does not set forth how the facts satisfied the second part of the Woo requirement, we concluded that Woo's less deferential sliding-scale standard of review was appropriate. We remanded with directions that the district court in turn remand to MetLife with instructions that it obtain the Social Security records and reconsider the claim on the expanded administrative record. Id. at 500.

Torres presented no evidence that UNUM denied his claim because it was financially advantageous for it to do so. Accordingly, he has not shown that UNUM's financial conflict of interest had a sufficient connection to the decision reached to trigger a departure from the abuse of discretion standard. The procedural irregularities we have discussed present a much closer case of a serious breach of UNUM's fiduciary duties. However, cognizant of the considerable hurdle plaintiffs have in reaching this standard and realizing that virtually anything connected to an administrator's denial of benefits could be said to have "some connection to the substantive decision reached," Woo, 144 F.3d at 1161, we conclude that UNUM's decision is not subject to less deferential review.

II.

Review of an administrator's decision under an abuse of discretion standard, though deferential, is not tantamount to rubber-stamping the result. On the contrary,

we review the decision for reasonableness, which requires that it be supported by substantial evidence that is assessed by its quantity and quality. Phillips-Foster v. UNUM Life Ins. Co. of Am., 302 F.3d 785, 798 (8th Cir. 2002); Donaho v. FMC Corp., 74 F.3d 894, 899-901 (8th Cir. 1996). Our review employs five factors:

> (1) whether the administrator's interpretation is consistent with the goals of the Plan; (2) whether the interpretation renders any language in the Plan meaningless or internally inconsistent; (3) whether the administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the administrator has interpreted the relevant terms consistently; and (5) whether the interpretation is contrary to the clear language of the Plan.

Shelton v. Contigroup Cos., Inc., 285 F.3d 640, 643 (8th Cir. 2002) (citation omitted). UNUM's failure to consider the side effects of medicine Torres took as prescribed for his cardiac condition and its failure to conduct a vocational evaluation resulted in a decision that can be described as rendering Plan language meaningless or as contrary to clear language of the Plan. The UNUM Plan defines disability as an inability "to perform with reasonable continuity and in the usual and customary manner the substantial and material acts" of the claimant's occupation. UNUM asked for and received from the hospital a copy of Torres's job responsibilities as a clinical perfusionist.[6] The hospital lists six major responsibilities for the position which include providing "for the delivery of patient care through the collection of health data and on-going patient assessment with identification of pertinent problems and needs," demonstrating the "skill and judgment necessary to implement procedures and documents appropriately," and coordinating and promoting "continuity of patient care

---

[6]The Plan also states, "UNUM will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location." The record contains no evidence that UNUM conducted independent research into the average working conditions of a perfusionist, and nothing suggests that the conditions and requirements at the Rapid City hospital were outside the norm.

through clear communication." The responsibilities are weighted, with the highest weight assigned to the implementation of procedures and documents and the second highest assigned both to delivery of patient care and clear communication.

Torres submitted evidence to UNUM that his cardiac medications caused him to experience fatigue, confusion, dizziness, and lack of concentration while he was at work. The medications were essential to treat his heart problems, but the demands of his job made it impossible for him to take them in a timely manner. Although his hearing was somewhat improved with the use of hearing aids, Torres listed the multiple machines at work in a cardiac operating room and described how the noise and his position in relation to the surgeon made it very difficult for him to hear. His treating ENT doctor recommended that he be trained in another area because of the noise level attendant to the job of perfusionist.

UNUM had no medical evidence from Torres's treating physicians that contradicted these assertions, nor did it send Torres to be examined by any other physician. In other words, the only medical evidence in the record supported Torres's claim that he was unable "to perform with reasonable continuity and in the usual and customary manner the substantial and material acts" of the job of perfusionist.

UNUM likewise did not evaluate the comprehensive vocational assessment Torres submitted, nor did it conduct its own vocational assessment in spite of its in-house doctor's assumption that it would do so before rendering a decision on Torres's appeal. According to the certified evaluator, Torres's inability to clearly hear the surgeon's directions created significant liability issues for him and his employer. Using the Classification of Jobs, a publication based on data from the Department of Labor, the evaluator concluded that it would not be feasible for Torres to return to the occupation of perfusionist. The evaluator's use of the Classification of Jobs presents the only record evidence of the occupational aspects of a perfusionist. Through its inaction, UNUM completely failed to comply with the Plan's requirement that

UNUM consider Torres's ability to perform his occupation "as it is normally performed in the national economy."

The third factor we consider in an abuse of discretion review is whether the administrator's interpretation conflicts with the substantive requirements of ERISA. ERISA requires all plan fiduciaries–a term that includes plan administrators–to discharge their duties in accordance with the plan documents. 29 U.S.C. § 1104(a)(1)(D). UNUM failed to discharge its duty to assess Torres's eligibility for benefits when it ignored evidence that was directly related to the Plan's definition of disability.

The record reveals another manner in which UNUM abused its discretion in its review of Torres's claim. Although there was absolutely no evidence that Torres had work-related or medical problems due to alcohol use, UNUM seized upon a private letter that mentioned his regret and embarrassment over an incident that resulted from his use of alcohol. Torres's employment records give no suggestion that his work was ever affected by alcohol use. Nonetheless, UNUM began writing of Torres's "alcohol abuse problems" as "a factor in his performance difficulties," which by the time of its last review grew to an innuendo that Torres had a problem with alcohol use on the job and a conclusion that he was discharged from employment because of performance issues[7] and conflicts with his employer. Similarly, although Torres's medical records contain absolutely no mention of alcohol use as a factor in his health, UNUM's in-house cardiologist suggests in his three-sentence review and opinion that alcohol was the "reversible etiology for [Torres's] congestive cardiomyopathy."

_____

[7]The performance issues noted in Torres's employment records related specifically to attention, decision-making in crises times, and lack of response. The medical evidence indicates these were a result of Torres's hearing problems and side effects of his cardiac medications.

UNUM conducted its review of Torres's claim without probing issues directly relevant to the Plan's definition of disability and, in the process, included baseless speculation that became the foundation of its conclusion that Torres did not qualify for benefits. UNUM's decision is not supported by substantial evidence and cannot be affirmed. See Donaho, 74 F.3d at 901 (where decision lacks record support or evidence in support does not ring true and is overwhelmed by contrary evidence, administrator's decision is unreasonable).

## CONCLUSION

UNUM abused its discretion as administrator of its long-term disability plan when it denied Torres's benefits claim. The record contains abundant evidence that because of sickness Torres was unable to perform the substantial and material acts of his job with reasonable continuity in his usual and customary manner. This is not a case that requires expansion of the administrative record. Accordingly, we reverse and remand to the district court for further proceedings consistent with this opinion. Our decision makes it unnecessary to consider the evidentiary issue Torres raised.

REVERSED AND REMANDED.

_____