# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 06-3730

_____

Eileen Miller,

        Plaintiff - Appellant,

v.

United States Department of
Agriculture,

        Defendant - Appellee.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the Eastern
\*   District of Missouri.
\*
\*       [UNPUBLISHED]
\*
\*

_____

Submitted: May 16, 2007
Filed: August 3, 2007

_____

Before WOLLMAN, BRIGHT, and JOHN R. GIBSON, Circuit Judges.

_____

PER CURIAM.

Eileen Miller appeals the district court's[1] grant of summary judgment upholding her dismissal from her job with the Knox County, Missouri, Farm Service Administration (FSA). Miller was dismissed after corn she was charged with keeping as collateral on a Farm Service loan was used for other purposes, leading to a default on a corn loan and bankruptcy. We affirm.

---

[1]The Honorable Mary Ann L. Medler, United States Magistrate Judge for the Eastern District of Missouri.

I.

The Knox County FSA employed Miller as a Program Assistant/Program Technician beginning in April 1986.[2] In 2003, Miller and her husband had two FSA corn loans outstanding. An inspection at their farm in May 2003 revealed that the 52,092 bushels of corn that was supposed to be securing both loans had gone missing from the designated grain bins on their farm. The discovery caused a debt of $94,017.56 to become due immediately. Miller and her husband filed for bankruptcy on June 27, 2003, and named the FSA as a secured creditor.

In an April 19, 2004, letter, Knox County FSA Executive Director Mark March suspended Miller without pay pending removal from her job for "[u]nauthorized removal and disposal of Commodity Credit Corporation [CCC] mortgaged collateral." The notice stated: "Both as a signatory and as an experienced FSA employee, you knew or should have known that you were responsible for the resulting lien on the aforementioned crop, for knowing the whereabouts and condition of the crop, and for preventing and/or reporting any unauthorized disposal/attempted disposal of said crop . . . . The offense with which you are charged casts grave doubt on your reliability, trustworthiness and integrity."

Under the informal appeals process outlined in 7 C.F.R. § 7.30, Miller appealed her suspension to the Knox County FSA and the Missouri State FSA Committee, both of which upheld it. On August 24, 2004, Miller's attorney filed a written appeal with FSA Deputy Director for Field Operations Douglass W. Frago. The appeal included letters of support, Miller's work plan, transcripts of the Missouri State Committee's hearing, and affidavits. One affidavit from Miller's husband denied Miller was part of the grain removal and disposition, said she had no contemporaneous knowledge

---

[2]The United States Department of Agriculture (USDA), the appellee here, administers the FSA through local committees. 16 U.S.C. § 590h(b).

about it, said he told Director March about the situation in May 2003, and said he only told Miller about the grain after speaking with March.

On September 3, 2004, Frago contacted Miller's attorney and confirmed that Miller requested a review and that she did not wish to have a hearing. Frago stated he would make a decision based on the written record, and would refer the appeal to personnel officer Judith Herzog. In an October 18, 2004, memorandum, Herzog reported back:

> As to Appellant's argument that the acts charged to her were not misconduct, said conduct was, under any definition of law, theft, and also carries the implication of fraud or conspiracy to commit fraud. Property, in this case, grain, on which the FSA had a legal lien, was taken without the knowledge or permission of FSA. Further, the taking of that property was prohibited by the [CCC] grain loan contracts, which granted Appellant and her husband large USDA/Federal agriculture loans based on the grain as security. There is no question that the conduct charged to Appellant was correctly labeled as "misconduct."
>
> As to the responsibility for the misconduct, Appellant was co-owner, with her husband, both of the CCC grain (hereafter referred to as "grain") and of the property on which the grain was stored. In addition, Appellant was co-signer, with her husband, on the CCC loans which the grain secured. These are facts verified by the ownership and loan documents, and are not in dispute. Appellant's name is literally written all over the grain, the storage property, and the loans. Appellant cannot dismiss her responsibilities for the grain as security for the loans at issue. Whether she actually participated in the removal of the grain, or even knew of it, is irrelevant. She was legally and ethically responsible for the security and whereabouts of that grain, and made herself so by co-signing the loan documents. In fact, that is one of the purposes, and results, of having a co-signer on a loan, to spread the responsibility for the security of liens and repayment of the loan. Again, whether she knew of that responsibility, or not, is irrelevant. . . . What is relevant is that there was an admission by one co-signer/co-owner of an unauthorized

-3-

removal of the grain and that it was Appellant's responsibility to know . . . the status of the grain. . . . Appellant . . . is a perpetrator, responsible for her own conduct and for the responsibility of knowing, or choosing ignorance of, the status of the CCC grain . . . .

What agency has charged, . . ., is the fact that the collateral didn't just "fail," it was removed without authorization from Agency, and it was an FSA employee and technical expert for that program, that is, Appellant, whose grain, loan, and responsibility it was. That is, in fact, the nexus required for removal of an employee . . . .

The memorandum cited two nexuses between Miller's conduct and its adverse impact on performance of her duties. First, in similar off-duty conduct cases involving unauthorized use, disposal, or theft of government or government-controlled property, "the nexus was that the trustworthiness and credibility of the employee was essential to the job, and was destroyed or rendered doubtful, as in Appellant's case."

Second, Miller's duties included "identifying to management other producers and loan recipients, signers and co-signers, who may have committed the same acts as Appellant and her husband." Since Miller was also responsible for deciding the appropriate consequences for these acts, "[n]either agency nor the parties to those loans can now have confidence in Appellant's integrity or impartiality in that function." Herzog's decision was based, in part, on affidavits from Miller's line of supervisors.[3]

Miller filed a reply to Herzog's memorandum on November 4, 2004. She objected to her supervisors' affidavits because she exercised her option to appeal

---

[3]Though Herzog found Miller's actual knowledge of the grain removal irrelevant to holding her responsible for it, she also noted there was no reason in the record to believe Miller was actually unaware of it.

based on the existing record.  She argued these new affidavits were an "attempt to add new evidence to the record that was not considered by the State committee."[4]

Frago released his decision on March 10, 2005.  It read:

> I have reviewed the entire record and have discussed this matter with Mr. Chott [his assistant] who has recommended that the decision of the Missouri State FSA Committee be sustained.  I concur.  The preponderance of the evidence shows that your client knew or should have known about the unauthorized removal and disposal of Commodity Credit Corporation mortgaged collateral.  There is also a nexus between her assigned programs in the Knox County FSA Office and the charged offense.  Finally, the penalty of removal is not arbitrary, capricious or unreasonable.

On January 19, 2006, Miller filed a petition for review in federal court alleging due-process violations.  On September 19, 2006, the district court granted the USDA's motion for summary judgment.  This appeal followed.

II.

We review an agency's actions to determine whether they were arbitrary or capricious, 5 U.S.C. § 706(2)(A), and we review the district court's decision de novo. United States v. Massey, 380 F.3d 437, 440 (8th Cir. 2004).

The law requires the USDA to rely on facts supported by "substantial evidence" in the record. 5 U.S.C. § 706(2)(E).  "That phrase does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Pierce v. Underwood, 487

---

[4]We note Miller supplemented the record herself when she appealed to Frago, adding letters of support, affidavits, work plans and hearing transcripts.

U.S. 552, 564-65 (1988) (quotation omitted). "A reasonable decision is one supported by substantial evidence, which is more than a scintilla but less than a preponderance." Hillery v. Metro. Life Ins. Co., 453 F.3d 1087, 1090 (8th Cir. 2006).

"Whether an agency's action is arbitrary and capricious depends on whether the agency has offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Friends of Boundary Waters Wilderness v. Dombeck, 164 F.3d 1115, 1121 (8th Cir. 1999) (internal quotation omitted) (quoting Mausolf v. Babbitt, 125 F.3d 661, 669 (8th Cir. 1997)).

"We are to make a searching inquiry into the facts, examining the full administrative record, but we do not substitute our judgment for that of the agency, even if the evidence would have also supported the opposite conclusion. We ask whether the agency articulated a rational connection between the facts found and the choice made." South Dakota v. United States Dep't of Interior, 423 F.3d 790, 799 (8th Cir. 2005) (internal citations and quotations omitted). If the agency's determination is supportable on any rational basis, we must uphold it. Voyageurs Nat'l Park Ass'n v. Norton, 381 F.3d 759, 763 (8th Cir. 2004).

III.

Much of Miller's opening brief centered on the violation of her due-process rights through the USDA's failure to comply with the stringent requirements of Section 554 of the Administrative Procedures Act (5 U.S.C. § 554). And indeed, the agency did not comply with those procedures. But it points out, correctly, that it did not have to – Section 554 of the APA does not apply to personnel matters:

> This section applies, . . ., in every case of adjudication required by statute to be determined on the record . . ., except to the extent that there is involved – . . . the selection or tenure of an employee . . . .

5 U.S.C. § 554(a)(2).

Miller's complaints of violations of conflict of roles and ex parte testimony rules were based on the mistaken application of 5 U.S.C. § 554 to this personnel matter, and she has argued no other basis in law to support them.

Miller's employment was authorized by the Soil Conservation and Domestic Allotment Act, Pub. L. No. 46, 49 Stat. 1148 (1935) (codified as amended at 16 U.S.C. § 590(h)(b)); she served at the pleasure of the agency. See 7 C.F.R. § 7.25(b)(1); Buchholz v. Aldaya, 210 F.3d 862, 864 (8th Cir. 2000). Miller was not covered by any civil service statutes, including the Civil Service Reform Act. Id. at 867. She had no protected interest in her employment, and, therefore, no due-process claim based on such an interest. Id. at 864; see also Massey, 380 F.3d at 441.

Though section 554 of the APA offers Miller no protection in this matter, USDA regulations do, particularly 7 C.F.R. §§ 7.30 and 7.31, which prescribe appeals procedures. Because Miller did not request a formal hearing under 7 C.F.R. § 7.31, her appeal proceeded under the procedures outlined in 7 C.F.R. § 7.30. This section gave her the right to appeal informally to the County Committee, the State Committee, and to the Deputy Administrator, and she did so.

However, 7 C.F.R. § 7.30 did not give Miller the right to cross-examine witnesses or any of the other usual procedural protections of a formal appeal process she now asks for. Miller admits she specifically and expressly declined a formal appeal hearing. She is simply not now entitled to have formal rules applied.

Once we scrub Miller's suit of her mistaken claims to APA-style procedural process, all that remains is her assertions that her termination was arbitrary and capricious and was not supported by substantial evidence.

Our inquiry in matters such as this is narrow. We review the USDA's ultimate decision and the facts it used in that decision, not the process by which it arrived at that decision, or other facts surrounding the matter.

Miller argues her due-process rights were implicated when the USDA charged her with dishonesty. The April 19, 2004, letter from March initially suspending Miller stated, "The offense with which you are charged casts grave doubt on your reliability, trustworthiness and integrity." Miller argues the implication of fraud requires the USDA to give Miller a "trial-type" hearing, citing, in her reply brief, Board of Regents of State Colleges v. Roth, 408 U.S. 564 (1972). But Roth holds only that where "a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Id. at 573 (citation omitted).

The Roth factors are not at issue here. The agency did not publicly accuse Miller of anything, and ended up firing her simply for what it decided she knew or should have known. Even if the Roth factors were present here, Miller was given ample notice and an opportunity to be heard. She waived her right to a formal hearing and proceeded on a more informal route through multiple levels of review. She was notified of the reasons for her suspension and eventual firing, she was notified of her right to appeal, and she took full advantage of that right.

Miller alleges Frago's decision was based on information not in the original record that she had no opportunity to challenge. But the March 10, 2005, letter from Frago that ended Miller's employment does not appear to rely on any such information.

In the end, Frago simply concluded Miller should be removed because she knew or should have known about the removal of the grain collateral, and that there was a connection between the grain removal and Miller's duties at the Knox County FSA Office. Both facts are supported by substantial evidence in the record, and are not counter to the evidence before the agency.

Miller handled grain loans for the agency. As a co-signer on the grain loan, she was responsible for its disposition. The determination that Miller "knew or should have known" of its removal does not equate with actual knowledge – but rather only constructive knowledge. The latter is all that is required for a termination that is neither arbitrary nor capricious.

## IV.

The district court found the agency followed the applicable regulations and necessary procedural requirements and made a rational decision to suspend and remove Miller based on relevant factors. The district court held that the agency's decision was based on substantial evidence, and that Miller's suspension and removal was not arbitrary or capricious. These conclusions are fully supported by the record. Miller received the due process for which she asked and to which she was entitled. We affirm.

_____